24058. INTERSTATE BOND COMPANY *et al.* v. STATE REVENUE COMMISSION OF GEORGIA.

DECIDED FEBRUARY 2, 1934. REHEARING DENIED FEBRUARY 21, 1935.

*Jones, Evins, Powers & Jones, Ralph Williams,* for plaintiffs in error.

*M. J. Yeomans, attorney-general, B. D. Murphy, J. T. Goree,* contra.

SUTTON, J. On August 8, 1933, the State Revenue Commission issued aaginst the Interstate Bond Company, a domestic corporation, a tax execution for additional income tax due the State for the fiscal year ending March 31, 1932. The same was levied by a deputy sheriff of Fulton county on certain personalty of the defendant. Bond was given for the forthcoming of the property, and on September 15, 1933, the defendant filed its affidavit of illegality to the tax execution, setting up that the same was proceeding illegally for the reason that the tax sought to be collected was upon business done by it in States other than Georgia, and that under the income-tax act of 1931 the defendant was not liable to pay income tax upon income derived from business done outside this State. Defendant set up that for the fiscal year ending March 31, 1932, its gross income was $261,869.34, of which the sum of $114,982.44 was received from business done in Georgia, $87,555.95 was from business done in Florida, $17,981.37 was from business done in North Carolina, $39,128.96 was received from business done in Kentucky, and $2,220.60 from business done in Mississippi. The defendant further set up that for the fiscal year its total expenses amounted to $203,451.33, of which $101,241.42 related to business done by it in Georgia, $39,841.10 to business done in Florida, $23,976.29 to business done in North Carolina, $36,432.17 to business done in Kentucky, and $1,960.35 to business done in Mississippi. The defendant further set up that its net income for the fiscal year was therefore $13,741.02 from business done in Georgia, $47,714.85 from business done in Florida, that it sustained a loss of $5,994.92 from business in North Carolina, that its net income was $2,696.79 from business done in Kentucky and $260.77 from business done in Mississippi; that the only income for the fiscal year ending March 31, 1932, that is taxable under the income-tax act of 1931 is the net income on business done in the State of Georgia, which is $13,741.02; that the tax was assessed on the entire net income of the defendant, from business done outside of Georgia, as well as business done herein, and the execution, which is for the full amount of the assessment, is therefore proceeding illegally.

The plaintiff in fi. fa. traversed the affidavit of illegality, and, upon the issue thus formed, the matter came on for a hearing before the superior court of Fulton county, the residence of the

defendant corporation. The case was submitted to a judge thereof, on the following agreed statement of facts, for determination without the intervention of a jury:

"Interstate Bond Company in a Georgia corporation having its principal office and place of business in the City of Atlanta. It is engaged in the business of purchasing tax liens, and all of the income sought to be taxed arose by virtue of such business. The company operates in Georgia, Florida, North Carolina, Kentucky, Mississippi and Louisiana. It is not domiciled or domesticated in any State other than Georgia, but it has qualified to do business in Florida, Kentucky, Mississippi and Louisiana. It has not qualified to do business in North Carolina. Its method of operating in Kentucky, Mississippi, and Louisiana is as follows: The company has a State agent in each of these States, who maintains an office in the name of the Interstate Bond Company. These State agents are guaranteed certain salaries, and in addition are entitled to a commission on all business in excess of an agreed amount. Each State agent has appointed sub-agents in various localities within the State. These sub-agents work entirely on a commission basis. The statutes of each of these States in substance provide that the officer charged by law with the duty of collecting taxes shall, when so requested by any person liable for the payment of the tax, accept payment from any third person and thereupon execute and deliver to such third person a certificate of transfer, or certificate of subrogation, the effect of which is to transfer to the person making the payment the lien of the State or county or municipality assessing the tax. The statutes further require the recordation of such certificates.

"In each of these States the local agents of the company initiate the business by contacting the tax debtors and agreeing, subject to the approval of the State agent, that the company will pay the taxes due by the said tax debtors, take transfers of the tax liens, as authorized by the statutes, and, in consideration of the payment of certain charges hereinafter referred to as carrying charges, refrain from enforcing the tax liens for an agreed period of time. When a contract has been approved by the State agent, and has thereby become effective, the contract is delivered to the tax debtor, and the local agent of the company thereupon either delivers to the tax-collector a draft drawn on the company in Atlanta, or

authorizes the tax-collector to draw a draft on the company in Atlanta, for the amount of the tax. The certificate of transfer, or certificate of subrogation, as the case may be, is thereupon executed by the tax-collector and delivered to the local agent of the company. When the certificate has been recorded, as required by the statutes in each of these States, the certificate is returned to the tax-collector and is attached to the draft above mentioned. One draft may, and in most instances does, include the amount of the taxes due by several tax debtors, in which event the several certificates of transfer are attached to the draft. These drafts are given by the agents of the company and are accepted by the tax-collectors, by whom or in whose favor they are drawn, as payment of the taxes, and are deposited as cash items. The company has never refused to pay any draft to which properly issued and recorded certificates of transfer, or certificates of subrogation, for the amount of the draft are attached. The carrying charges above referred to include interest for the period for which the company agrees to refrain from enforcing the tax lien. These charges are collected by the local agent at the time the contract is entered into, and before the draft above mentioned is drawn. The local agent deducts his commission and remits the balance to the company at its offices in Atlanta.

"At the expiration of the period for which the company has agreed to refrain from enforcing the tax lien, the contract may be renewed or extended for an additional agreed period of time; in which event the local agent who initiated the business collects from the tax debtor interest and carrying charges for the additional period, deducts therefrom his commission, and remits the balance to the company at its office in Atlanta.

"When the amount advanced by the company is due, under the contract with the tax debtor, the company notifies the debtor and the local agent, who initiated the business, of this fact and the local agent makes the collection, gives the debtor a receipt, remits the money to the company, and the company then cancels the certificate of transfer and sends it to the local agent for delivery to the debtor. Neither the State agent nor any local agent has authority to invest any of the proceeds of collections made by him, but both the State agent and the local agent are required to remit all collections to the Interstate Bond Company at its home office in

Atlanta, Georgia. During the time that elapses between the payment of the sight draft in the beginning and the time that the amount advanced by the company becomes due, the certificate of transfer, which is the evidence of the tax lien, is kept at the home office of the Interstate Bond Company in Atlanta, Georgia.

"The method of operation of the company in the State of Florida is somewhat different, due to the difference in the statutes of this State. The company has no local agents in Florida, but does have a State agent, who has an office in the name of Interstate Bond Company. By the statutes of Florida it is provided that once each year a designated officer of the various taxing districts shall cause all property on which taxes have not been paid to be sold at public outcry. The sales are not held simultaneously throughout the State, but the time of sale for each taxing district is fixed either by statute or by charter. The purchaser at each such sale receives a certificate of sale which entitles him to a deed to the property at the expiration of a redemption period of two years, or which certificate the purchaser may use as the basis for an equitable foreclosure. Before tax sales are held in any city or county in Florida, the State agent of the Interstate Bond Company investigates and determines the property which he desires that the company should bid for. He then attends the sale and bids on behalf of the company. When the company becomes the purchaser, a certificate is issued and delivered to the State agent, who, after having the certificate recorded as required by the statutes, forwards the same to the Atlanta office and draws on the company for the purchase price. Under the statutes of these States the taxpayer may redeem his property within two years by paying the amount of the purchase price to the clerk of the circuit court of the county in which the land is situated and in whose office the certificate of sale is recorded. Payment for redemption can not be made to the holder of the certificate of sale, but must be made to the clerk. Whenever redemption is made of property purchased by the Interstate Bond Company, the clerk notifies the company and the company sends the certificate to the clerk and the clerk remits the fund to the company. The profit of the company on these transactions consists of the interest and penalties fixed by the statute. The tax liens transferred to the company in Florida, which liens are evidenced by the certificate of sale above referred to, are foreclosed, if not

redeemed, by equitable actions filed in the name of the company, in the circuit court.

"The statutes of Kentucky, Mississippi, and Louisiana provide a summary process of foreclosure by which the property subject to the tax lien may be sold by the sheriff, or other designated officer, after certain notice and advertisement.

"The company owns no property in either of the States referred to except such as it has purchased at foreclosure sales. The offices maintained in each of said States are maintained at the expense of the company. The company maintains bank accounts in several of the States herein referred to, but all sums paid out in the purchase of certificates of transfer and certificates of sale, as herein described, are paid from accounts kept in banks in the City of Atlanta. All collections made by the company or by any of its State or local agents are remitted directly to the company at its home office in Atlanta."

At the conclusion of the evidence the judge found in favor of the plaintiff in fi. fa. and ordered that the levy proceed. To this judgment the defendant in fi. fa. excepted.

The income-tax act of 1931 provides as follows:

"Sec. 4. *Corporations.* Every domestic corporation, and every foreign corporation, shall pay annually an income tax equivalent to 4% of the net income from property owned or from business done in Georgia, as is defined in section 15 of this Act. . . Sec. 15. *Corporations.* The tax imposed by this Act shall apply to the entire net income, as herein defined, received by every domestic corporation, and every foreign corporation owning property or doing business in this State. *Allocation and Apportionment of Income.* (a) Interest, and rents not received in connection with the transaction of business, and gains from the sale of property not held, owned, or used in connection with business (less related expenses, if any), shall be allocated to Georgia if received from sources within the State of Georgia; and if received from sources outside the State of Georgia, such income shall be allocated outside the State, and the balance hereinafter referred to as business income shall be allocated to Georgia and shall be taxable as hereinunder set forth. (b) If the trade or business of the corporation is carried on entirely within the State, the tax shall be imposed on the entire business income, but if such trade or business is car-

ried on partly within and partly without the State, the tax shall be imposed only on the portion of the business income reasonably attributable to the trade or business within the State, to be determined as follows: (1) Interest, and rents (less related expenses) received in connection with business in the State, shall be allocated to the State; and where received in connection with business outside of the State, shall be allocated outside of the State. (2) Gains from the sale of capital assets or property held, owned, or used in connection with the trade or business of a corporation but not for sale in the regular course of business shall be allocated to the State, if the property sold is real or tangible personal property situated in the State, or intangible property connected with the business in the State; otherwise such gains shall be allocated outside of the State. (3) Net income of the above classes having been separately allocated and deducted as above provided, the remainder of the net business income of a corporation shall be allocated and apportioned as follows: (a) Where income is derived principally from the holding or sale of intangible property, the portion thereof attributable to this State shall be taken to be such percentage as the gross receipts in this State for the taxable year bear to the total gross receipts. (b) Where income is derived from business other than the manufacture and sale of tangible personal property, or from the holding or sale of intangible property, or the conduct of a public utility, such income shall be specifically allocated or equitably apportioned within and without the State under rules and regulations of the commissioner. (c) Where income is derived from the manufacture or sale of tangible personal property, the portion thereof attributable to business within the State shall be taken to be such percentage of the total of such income as the tangible property and business within the State bear to the total tangible property and total business, the percentage of tangible property and of business being separately determined and the two percentages averaged. For the purpose of the foregoing computation, the value of the tangible property shall be taken to be the value of the tangible property with no deduction on account of encumbrances thereon held and owned by the corporation in connection with such business at the close of the taxable year for which the income is returned, excluding any property the income of which is not taxable or separately allocated under the foregoing

provisions. The term 'tangible property,' as used herein, means real property and corporeal personal property, not including money, bank deposits, shares of stock, bonds, notes, credits, evidences of debt, choses in action, or evidence of interests in property. The business of the corporation shall be measured under rules and regulations of the commissioner. For the purpose of this section, the word 'sale' shall include exchange, and the word 'manufacture' shall include the extraction and recovery of natural resources and all processes of fabricating and curing. Where one corporation owns stock in another corporation, the dividends on such stock received by the corporation owning the same shall not be taxable to such corporation, but shall be taxable to the stockholders of the corporation owning the stock when distributed in its dividends." Ga. L. Ex. Sess. 1931, pp. 24, 26, 34, 35, 36.

An income tax may be described as one relating to the product or income from property or from business pursuits, and has been defined as a tax on the yearly profits arising from property, professions, trades, or offices, or as a tax on a person's income, emoluments, profits, and the like, or the excess thereof over a certain amount. The general view is that an income tax is not a property tax, but more in the nature of an excise tax. It is not, however, an occupation or a poll tax, It is not a franchise tax nor a sale tax, but the very antithesis thereof. *Featherstone* v. *Norman,* 170 *Ga.* 370 (153 S. E. 58, 79 A. L. R. 449). It is competent for a State to impose a tax upon the income of a resident thereof, or a domestic corporation, whether such income be derived from sources within or without the State. 61 C. J. 1561, § 2307.

Statutes levying taxes, excises, or duties upon the citizens of a State are to be construed strictly against the governmental authorities and liberally in favor of the citizen. *Mystyle Hosiery Shops Inc.* v. *Harrison,* 171 *Ga.* 430; *Mayor &c. of Savannah* v. *Hartridge,* 8 *Ga.* 23 (155 S. E. 765). Construing all of the above provisions of the income-tax act of 1931 together, and construing them strictly against the taxing power and liberally in favor of the taxpayer, it is our opinion that it is not the purpose and intent of the act to tax the net income of a domestic corporation derived from property owned or business done outside the territorial limits of the State of Georgia, although this may be done without infringing the constitution, as regards a domestic corporation.

However, it is the opinion of this court that the business carried on by the defendant corporation in this case, which is a domestic corporation, is in reality carried on and transacted by it in the State of Georgia, and that the net income received by it is derived from the use of its intangible assets, whose situs is in this State, the same being its money, and that while this money is used by investing the same in property in other States, the business is so transacted as to constitute business transacted within this State, within the meaning of this act. The source of the entire net income of the defendant corporation is from business transacted in Georgia. The net income is not derived from property owned in other States. The income is derived·from the use of its intangible property, to wit its money, in the purchase of tax liens in this State and elsewhere. The defendant corporation is not domiciled in any of these other States, and has no regular principal place of doing business in such other States; but its State agents maintain offices in these other States only for the purpose of contacting delinquent tax debtors, and no offices or principal places of doing business are maintained therein where money is kept for the purpose of financing the taxes of such delinquent tax debtors. The real business of the defendant corporation is conducted through its principal place of business, to wit its home office in Atlanta. Here the funds or intangible property of the defendant are situated, and it is on the home office that the drafts are drawn to pay these taxes whenever contact is made with a tax debtor in another State. We do not think that the fact that the tax debtors pay, in such other States, the "carrying charges" to the State and local sub agents of the defendant, would make the kind of business done by the defendant a business carried on in such other States.

It therefore follows that the judge correctly ruled against the affidavit of illegality and ordered that the levy proceed.

*Judgment affirmed. Jenkins, P. J., concurs. Stephens, J., dissents.*