19838. STOCKHAM VALVES & FITTINGS, INC., *v.* WILLIAMS, State Revenue Commissioner.

ARGUED SEPTEMBER 12, 1957—DECIDED NOVEMBER 8, 1957— REHEARING DENIED NOVEMBER 26, 1957.

*John Izard, Jr., William K. Meadow, Spalding, Sibley, Trout-man, Meadow & Smith, White, Bradley, Arant, All & Rose,* for plaintiff in error.

*Sutherland, Asbill & Brennan, Crenshaw, Hansell, Ware & Brandon, Moise, Post & Gardner, Arnall, Golden & Gregory, Smith, Kilpatrick, Cody, Rogers & McClatchey, Bird & Howell, Alston, Sibley, Miller, Spann & Shackelford, Jones, Williams, Dorsey & Kane, Powell, Goldstein, Frazer & Murphy,* for parties at interest not parties to record.

*Eugene Cook, Attorney-General, William L. Norton, Jr., Assistant Attorney-General, Ben F. Johnson, Jr., Deputy Assistant Attorney-General,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) That the decision of the questions here presented is not without difficulty, is pointed out by the Supreme Court of the United States in the recent decision in Freeman *v.* Hewit, 329 U. S. 249, 252 (67 Sup. Ct. 274, 91 L. ed. 265), where it is said: "The history of this problem is spread over hundreds of volumes of our Reports. To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future. Suffice it to say that especially in this field opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts." In Leloup *v.* Port of Mobile, 127 U. S. 640, 648 (8 Sup. Ct. 1380, 32 L. ed. 311), the Supreme Court stated the fundamental limitations of the commerce clause on State taxation as follows: "In our opinion such a construction of the Constitution leads to the conclusion that no state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress." In *Forrester* v. *Culpepper,* 194 *Ga.* 744, 748 (22 S. E. 2d 595), this court quoted with approval from *Interstate Bond Co.* v. *State Revenue Com.,*

50 *Ga. App.* 744, 751 (179 S. E. 559), the following: "The general view is that an income tax is not a property tax, but more in the nature of an excise tax." In Alpha Portland Cement Co. *v.* Massachusetts, 268 U. S. 203, 218 (45 Sup. Ct. 477, 69 L. ed. 916, 44 A. L. R. 1219), a Massachusetts excise tax, based on the proportion of a company's assets employed in the State and the proportion of its net income derived in the State, was held unconstitutional as applied to a taxpayer engaged exclusively in interstate commerce. The taxpayer maintained a branch sales office in Massachusetts, which was used as headquarters by its traveling salesmen. It owned office equipment there, and its local manager handled petty cash items for the company through a bank account maintained in his own name. The court found that all of the taxpayer's activities were an integral part of interstate commerce, and therefore held the excise unconstitutional. The court said: "The local business of a foreign corporation may support an excise measured in any reasonable way, if neither interstate commerce nor property beyond the state is taxed. Underwood Typewriter Co. *v.* Chamberlain, 254 U. S. 113, approved such an excise measured by income reasonably attributed to intrastate business; but nothing there said was intended to modify well established principles. It must be read with the essential facts in mind. Local business was a sufficient basis for the excise, and there was no taxation of interstate commerce or property beyond the state." In Spector Motor Service *v.* O'Connor, 340 U. S. 602, 609 (71 Sup. Ct. 508, 95 L. ed. 573), it is said: "This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was *exclusively* interstate in character. The constitutional infirmity of such a tax persists no matter how fairly it is apportioned to business done within the· state."

From the foregoing statement of facts it appears without dispute that the plaintiff was engaged exclusively in interstate commerce in so far as its activities in Georgia are concerned; and in Atlantic Lumber Co. *v.* Commissioner of Corporations and Taxation of Massachusetts, 298 U. S. 553, 555 (56 Sup. Ct. 887, 80 L. ed. 1328), it was held: "If appellant did nothing but transact interstate business, the tax would constitute a burden upon that commerce, and could not stand under the commerce clause of the Constitution."

Counsel for the defendant contend that a tax on net income does not stand upon the same basis and is not the equivalent of a license, occupation, franchise, or privilege tax on interstate commerce; but, as previously pointed out, we have held that an income tax is in the nature of an excise tax, and in the footnote added to the dissenting opinion written by Mr. Justice Reed in Interstate Oil Pipe Line Co. *v.* Stone, 337 U. S. 662, 677 (69 Sup. Ct. 1264, 93 L. ed. 1613), it is said: "Since we perceive no difference for the purposes of this case between franchise, privilege, and excise taxes, insofar as they are exacted for the privilege of doing or the doing of interstate business, we have treated them as identical as far as their validity under the commerce clause is concerned. In Ozark and Anglo-Chilean Nitrate the taxes were called franchise taxes; in Alpha it was labeled an excise tax." In *Dennison Mfg. Co.* v. *Wright,* 156 *Ga.* 789 (3b) (120 S. E. 120), this court held: "Where a foreign corporation rents and maintains an office in this State, with a stock of samples and a force of office employees and traveling salesmen, merely to obtain orders in this State and other States, subject to approval by its home office, for its goods to be shipped directly to its customers from its home State, such an arrangement is part of its interstate commerce, and not subject to a local excise tax."

We are also of the opinion that the income-tax statute here under consideration, as applied to the plaintiff, violates the due-process clause of the Federal Constitution. We take it that no one will question the fact that a State may not tax activities carried on outside its borders without violating this provision of the Constitution. The question in every such case is whether such a connection exists between a business and the taxing State as to permit the imposition of a general income tax on a portion of the net income of the business; and in Wisconsin *v.* J. C. Penney Co., 311 U. S. 435, 444 (61 Sup. Ct. 246, 85 L. ed. 267), the Supreme Court said: "That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return." See also Miller

Brothers Co. *v.* Maryland, 347 U. S. 340, 344 (74 Sup. Ct. 535, 98 L. ed. 744), where the foregoing rule was applied to facts quite similar to those in the instant case. There the court said: "The question here is whether this vendor, by its acts or course of dealing, has subjected itself to the taxing power of Maryland or whether it has afforded that State a jurisdiction or power to create this collector's liability." After referring to its previous decisions, that court said: "Our decisions are not always clear as to the grounds on which a tax is supported, especially where more than one exists; nor are all of our pronouncements during the experimental period of this type of taxation consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law. But the course of decisions does reflect at least consistent adherence to one time-honored concept; that due process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax."

This court, in *Redwine* v. *Dan River Mills,* 207 *Ga.* 381 (61 S. E. 2d 771), held that activities more extensive than those carried on by the plaintiff did not constitute "doing business" within the meaning of the income-tax act then in effect; and in *Suttles* v. *Owens-Illinois Glass Co.,* 206 *Ga.* 849 (59 S. E. 2d 392), it was held that accounts growing out of similar activities in Georgia did not have a tax situs in Georgia. See also Norton Co. *v.* Department of Revenue of Illinois, 340 U. S. 534 (71 Sup. Ct. 377, 95 L. ed. 517).

We hold, therefore, that as applied to the plaintiff the Georgia Income Tax Act violates both the commerce and due-process clauses of the Federal Constitution, and the trial court erred in rendering judgment against the plaintiff. The cases mainly relied upon by the defendant, namely, U. S. Glue Co. *v.* Town of Oak Creek, 247 U. S. 321 (38 Sup. Ct. 499, 62 L. ed. 1135); Underwood Typewriter Co. *v.* Chamberlain, 254 U. S. 113 (41 Sup. Ct. 45, 65 L. ed. 165); Atlantic Coast Line R. Co. *v.* Doughton, 262 U. S. 413 (43 Sup. Ct. 620, 67 L. ed. 1051); Memphis Natural Gas Co. *v.* Beeler, 315 U. S. 649 (62 Sup. Ct. 857, 86 L. ed. 1090); West Publishing Co. *v.* McColgan, 27 Cal. 2d 705 (166 Pac. 2d 861), and others, are clearly distinguishable on their facts. In those cases the taxpayers were either residents

of the taxing State, or were carrying on within the State extensive intrastate as well as interstate business, or else the statements therein made which would seem to conflict with the rulings here made were obiter. In Freeman *v.* Hewit, 329 U. S. 249, 255 (67 Sup. Ct. 274, 91 L. ed. 265), the Supreme Court of the United States recognized that the taxing power permitted by the U. S. Glue Company case, supra, was applicable only to residents of a State. It was said: "It [a State] can tax the privilege of residence in the State and measure the privilege by net income, including that derived from interstate commerce." The Underwood Typewriter decision, supra, was explained and limited in Alpha Portland Cement Co. *v.* Massachusetts, 268 U. S. 203, 218 (45 Sup. Ct. 477, 69 L. ed. 916, 44 A. L. R. 1219), where the court said: "The local business of a foreign corporation may support an excise measured in any reasonable way, if neither interstate commerce nor property beyond the state is taxed. Underwood Typewriter Co. *v.* Chamberlain, 254 U. S. 113, approved such an excise measured by income reasonably attributed to intrastate business; but nothing there said was intended to modify well established principles." The dictum in the Beeler case, supra, was expressly disapproved as such by the Supreme Court in Spector Motor Service *v.* O'Connor, 340 U. S. 602, 609 (footnote) (71 Sup. Ct. 508, 95 L. ed. 573), in the following language: "Any suggestion in that opinion as to the possible validity of such a tax if applied to earnings derived wholly from interstate commerce is not essential to the decision in the case."

As already pointed out by the United States Supreme Court, its decisions dealing with the problem here presented are spread through hundreds of volumes of its reports, and all of its pronouncements are not consistent or reconcilable. To attempt to harmonize all that has been said, would neither clarify what has gone before nor guide the future, and to undertake here to point out the distinguishing features of each of the numerous decisions would only consume unnecessary time and space.

*Judgment reversed. All the Justices concur, except Head., J., who dissents.*