No. 85.—MANSFIELD TORRANCE, administrator, &c. plaintiff in error, *vs.* ANN E. McDOUGALD, administratrix, defendant in error.

[1.] Letters of administration, granted without the applicant's causing a citation to issue, and giving security, and taking the oath prescribed by law, are void; nor will a subsequent compliance with the Statute in the two last particulars, cure the defect; notice being indispensable.

[2.] The rule of construction applicable to all writings, Constitutions, Statutes, contracts and charters, public or private, and even to ordinary conversations, is this: that general and unlimited terms are restrained and limited by particular recitals, when used in connexion with them.

[3.] In construing Statutes, Courts are to look at the language of the whole Act; and if they find in any particular clause an expression not so large and extensive in its import, as those used in other parts of the same Statute ; if upon a view of the whole Act, they can collect from the more large and extensive expressions used in other parts, the real intention of the Legislature, it is their duty to give effect to the larger expressions.

[4.] General words in a Statute are to receive a general construction, unless there be something in it to restrain them.

Motion, in Muscogee Superior Court, on appeal from Ordinary. Decision by Judge IVERSON. November Term, 1852.

For the facts of this case, refer to the decision of the Court.

W. DOUGHERTY, for plaintiff in error.

JONES, BENNING and JONES, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

James C. Watson having departed this life, testate, his will was proven and admitted to record, on the 15th day of May, 1843; and letters testamentary were granted by the Court of Ordinary of Muscogee County, to John H. Watson and Benjamin W. Walker, the executors therein appointed. On the 19th of January, 1846, the letters of Watson, and on the 7th of January, of Walker, were severally revoked. In March, 1847, William Dougherty applied for administration *de bonis non*, with the will annexed, on the estate of the decedent; and the citation issued by the Clerk, was published in the Columbus Enquirer, bearing date of the 30th of that month. At the May Term ensuing, nothing was done. At the July Term following, William Dougherty, the applicant, refusing to give the security required by law, Mansfield Torrance was appointed administrator *de bonis non*, with the will annexed, on the estate of Watson; and the order appointing him, declares that " he be in all cases and *for all purposes, the legal representative thereof.*"

At the June Term, 1852, of the Court of Ordinary, Mrs. Ann E. McDougald, as administratrix of Daniel McDougald, deceased, and representing that as such, she was a creditor of Watson, petitioned the Court of Ordinary to have Torrance removed, upon the grounds that his appointment was irregular and illegal, in this: that he had not given the notice required by law, of his intention to apply for letters; and that he could not be appointed upon Dougherty's notice, as a term intervened between the one when that application should have been disposed of, and that

at which Torrance was appointed; at which no proceedings whatever were had, not even a continuance of the cause. And further, it was objected, that he had not taken the oath of office and given the bond and security required by law.

The first objection was overruled by the Court, and Torrance was allowed until the 14th of the month to comply with the requisitions of the Statute; which was done on his part, and letters of administration were granted to him accordingly.

From this decision Mrs. McDougald appealed, and on the 22d of December, 1852, the cause came on for a final hearing in the Superior Court, and was submitted to a special Jury; and the record containing the facts which I have recited, being submitted in evidence, the Court charged the Jury, that if the testimony was true, the Court of Ordinary had no authority to appoint Torrance administrator, and that his appointment being contrary to law, was void. The counsel for Torrance excepted to the charge, and the Jury having returned a verdict, setting aside and vacating Torrance's letters of administration, this writ of error is brought to reverse the judgment.

[1.] Was the charge of the Court right? To our minds, the question is a plain one, and can admit of but one answer.

It is contended that under several general clauses in our law of executors and administrators, authorizing the Courts of Ordinary to pass all orders which they may see fit, for the preservation and good management of estates, that the Court had the power to constitute Mr. Torrance their agent, *pro hac vice*, and especially under the peculiar circumstances of this estate.

It would be a sufficient reply to this position to say, that even admitting its soundness, which we do not, that such is not the case made by the record. The Court of Ordinary do not put their order of appointment on that ground, and restrict the powers delegated to this anoamalous agent to any particular object. But the Court claimed and exercised the right, as the record shows, of granting a general administration, and the order passed clothed and vested Mr. Torrance with the most plenary powers. He was to be " in all cases and for all purposes whatsoever, not the mere employee of the Court, but the legal rep-

resentative of James C. Watson, · deceased. And strange enough, the proceedings recite, that Mr. Dougherty, having *refused* to give the security *required by law,* (thus recognizing the legal obligation to demand it,) the Court, therefore, appoints Mr. Torrance, without giving any security, and no oath is even exacted of him.

But counsel in the argument, utterly disclaim considering Mr. Torrance as regularly appointed. It is admitted that the objections to his appointment in this view, are insurmountable; and as before intimated, in the face of the order, it is claimed that he is a sort of non-descript agent of the Court, to do its bidding during their good pleaseure, as to the preservation and proper management of the assets, and to surrender them up, without resistance even, whenever any one better entitled shall present himself.

But even this view, untenable as it is, will not extricate the counsel from the dilemma he is in. For if Torrance was not a regularly appointed administrator, but a mere *locum tenens* of the Court, created for a temporary purpose, how can that appointment be now converted into a regular administration? It is insisted that by giving bond and security in June, 1852, the defective appointment of 1847 is effectually cured; and that too, although no citation was issued or notice given, in terms of the law. For it will be borne in mind, that Dougherty's application was out in May, 1847, at which term nothing was done, not so much even as a co ntinuance of the case. And Torrance was not appointed until the July following. He can take nothing, therefore, under Dougherty's application, owing to this *hiatus* of a term; even if he could, under any circumstances, the propriety of which practice, I very much question. A, a creditor of an estate applies for letters; B, C and others, having an interest in the estate, are content to have it entrusted to A's management; and consequently, do not attend the Court. At the expiration of the time, D is appointed, who is exceedingly objectionable to all concerned, and whose appointment might, and probably would have been successfully resisted. I repeat, I exceedingly doubt, whether this practice can be justified. Torrance, then,

was appointed without notice and without taking the oath or giving security, and now, by complying with the law in the two latter particulars, it is insisted that the deed is sanctified. We think not. Even the Clerk of the Court of Ordinary, could not have the administration of an estate, devolved upon him under the law, without notice; and in such cases, it is competent for the Court to require additional security, besides that afforded to the parties in interest, by his official bond. But we announce distinctly, that we recognize no such *heteroclite* administration, as that which is attempted to be set up here.

[2.] With regard to these " *general welfare*" clauses relied upon in argument, as conferring unlimited power upon the Courts of Ordinary, to do whatever they may see fit, in respect to the management of estates, I would take occasion to remark, that the rule of construction applicable to all writings, Constitutions, Statutes, contracts and charters, public or private, and even to *ordinary conversation*, is this : that general and unlimited terms are restrained and limited by particular recitals, when used in connexion with them. Not that I would reject the general terms altogether, but I would restrict them to cases of the same kind as those expressly enumerated.

[3.] In construing Statutes, Courts, I grant, are to look to the language of the whole Act, and if they find in any particular clause, not so large and extensive in its import as those used in other parts of the Statute ; if upon a view of the whole Act, they can collect from the more large and extensive expressions used in other parts, the real intention of the Legislature, it is their duty to give effect to the larger expressions.

But when the law declares, that *all* applications for letters of administration shall be made to the Clerk of the Court of Ordinary, who *shall* give notice thereof, in one of the public gazettes of this State, and by advertisement at the Court-house of the County, at least thirty days before the sitting of the Court, and that every administrator, even those with the will annexed, *shall* take the following oath, &c. and *shall* enter into bond with good and sufficient security, &c. it would be a stretch of construction indeed, to hold that under some general clause, that

the Courts of Ordinary may pass such order in relation to estates, as they may think expedient and fit; that these cardinal and peremptory pre-requisites, should be disregarded, and a person appointed administrator *plenipotentiary*, without having complied in the first instance, with any one of them.

[4.] I will merely add, that another well settled rule of interpretation is, that general words in a Statute, are to receive a general construction, unless there be something in it to restrain them. And so inflexible was this rule considered, that the *Statute of Wills*, (32 *Hen. VIII.*) having authorized all and every person or persons, to devise their lands, it was feared that it might enable infants and insane persons to do it; and the Statute of 34 *Hen. VIII.*, was consequently passed, to introduce these exceptions. *Beekford vs. Wade,* 17 *Ves.* 88. The same principle was recognized in the decision, that the *Statute of Fines, 4 Hen. VII. c.* 24, *barred infants. Sorrell vs. Lord Zouch,* 1 *Stow.* 369. It is admitted to apply to Statutes of Limitation. *Demarest vs. Wyncoop,* 3 *John. Ch. R.* 129.