## BOARD OF TAX-ASSESSORS OF DECATUR COUNTY *v.* CATLEDGE.

No. 8555.   October 16, 1931.

*W. V. Custer & Son,* for plaintiffs.

*A. B. Conger* and *H. G. Bell,* for defendant.

Russell, C. J.   The Board of Tax-Assessors of Decatur County filed a petition for mandamus to compel the sheriff, W. J. Catledge, to serve upon a number of taxpayers of the county notices of changes made by the board of tax-assessors in the returns as filed by the taxpayers.   It is alleged that the changes made by the assessors will be invalid unless the notices are served upon the taxpayers, and that the sheriff refuses to serve the notices in question, which were returned by the sheriff to the board, accompanied by the following letter:   "I am hereby returning notices you have placed in my hands to be served on taxpayers, for the reason the chairman of the board of commissioners refuses to pay me for the ones you have lowered the tax on, but he says he will pay for the ones in which you have raised the tax; so I am returning to you the ones you have reduced the tax on, as you know I can't serve them for nothing."   The petition also set out that the board of tax assessors, on June 15, 1931, adopted a resolution employing W. V. Custer & Son as its attorneys to compel by legal process the faithful fulfillment of the duty of the sheriff; that the compensation of said attorneys is a necessary expense to be incurred by the board in the performance of its duty, and should be paid from the county treasury; and that the compensation required by said attorneys in bringing this suit is $250.   They prayed for a rule absolute, compelling the sheriff to duly and faithfully perform the official duties laid upon him by statute; and that the reasonableness of the counsel fee be passed upon, and ordered paid if the court deemed it a proper charge.   The answer of the defendant "shows that under the law he is not required to serve notices on taxpayers whose taxes have been lowered, and that the same would not be a legal charge against the county, and that he could not collect for his

services for serving such notices where the valuations of the property of the taxpayer had been lowered, this notice not being required by law." Upon the hearing the judge denied a mandamus absolute, and the plaintiffs excepted.

.The controlling question in this case is whether, under the act of 1913 (Ga. L. 1913, p. 123), which requires that the board of tax-assessors shall give notice to the taxpayers whose returns as taken by the tax-receiver have been changed by the appraisers, the notice prescribed by section 6 of the act is unnecessary in cases where the only change made in a particular assessment is one reducing the return as made by the taxpayer. This court has several times decided that where a change by increasing a taxpayer's assessment is made by the board of tax-assessors, the taxpayer must be served with a notice which will give him an opportunity to contest the increase. *Wade* v. *Turner,* 146 *Ga.* 600 (91 S. E. 690) ; *Linder* v. *Watson,* 151 *Ga.* 455 (107 S. E. 62). Section 6 of the act of 1913, construed literally, would seem to require that a taxpayer whose return has been changed in any manner (whether the change effects an increase of his assessment which would place upon him a greater burden of taxation than he has sworn he is required to pay, or whether it diminishes that burden by reason of the fact that the change made by the appraisers is smaller in amount than that at which he returned his property) be served with notice of the reduction. However, it has long been recognized in this court that the cardinal rule to be employed in the construction of a statute passed by the General Assembly is to ascertain the intention of the General Assembly in the passage of the act in question, and that a wholly unreasonable intention shall not be attributed to the General Assembly. Where an expression in a statute is couched in such language (for instance, if the verbiage is too general, vague, and indefinite to embrace all of the subject-matter included in the act) as to become meaningless, the entire act will fail of its purpose and be set aside. In many instances this rule has been applied where portions of the statute have been stricken therefrom without avoiding the entire law as passed by the General Assembly (*Winslett* v. *Case-Fowler Lumber Co.,* 173 *Ga.* 539, 160 S. E. 384) ; and under the general principle just stated we are of the opinion that the judge did not err in his construction of section 6 of the act of 1913, as applicable to the facts of this case. All law is

supposed to be based upon sound reason. In construing any law, one must look to the old law, the evil, and the remedy. Prior to the passage of the act of 1913, which created this board of tax-assessors, such a body was unknown to our law. The duties prescribed for this board of tax-assessors came in as a novelty with the passage of the act. Prior to the passage of this act, the assessment of his property made by a taxpayer was accepted by the tax-receiver in each county in the State, unless the tax-receiver himself raised the assessment. In that event the law provided that the issue raised between the taxpayer and the tax-receiver might be settled by arbitration. Furthermore, the grand jury was empowered to raise the return of any taxpayer, in the investigation which that body was required to make to ascertain whether or not the taxpayers of a county had made fair and just returns; and this likewise might be submitted to arbitration.

This was the condition of affairs prior to the passage of the act here involved, and at the time the General Assembly took the subject up for legislative action. What was the evil? It must be assumed that the legislature was impressed, and was of the opinion that the old law did not produce adequate revenue under the existing plan,—that the returns of taxpayers in general were unduly affected by the maxim, "When self the wavering balance shakes, 'tis rarely right adjusted," that under the existing plan tax-dodging was too easy, whether due to carelessness or design. Other possible evils, not necessary to be stated at this time, may have been in the mind of the General Assembly; but it is plain that evils did exist, and it was to remedy the evils, and not to place unreasonable burdens upon honest taxpayers who had returned their property, in the judgment of the board of tax-assessors, at a fair valuation, and in some instances at a greater valuation than the assessors themselves thought the property was worth. In this view of the case it can not be conceived to have been the intention of the General Assembly to place upon taxpayers, who had already been adjudged by the board of tax-assessors to have performed the duty required by law, the burden and expense of appearing before the board, for no purpose and without reason, when there was no complaint of the existing assessment which had been filed with the tax-receiver. Under the general language employed in section 6 of the act in question, it might be perfectly legitimate for the tax-assessors, in

the performance of their duty to equalize the burdens of taxation, to reduce the returns of some taxpayers so as to bring their returns in line with the values assessed by the board of tax-assessors upon the property of the taxpayers of the county generally, and thereby equalize the burdens of taxation throughout the county. Certainly it was not the intention of the legislature to place upon taxpayers whom the board of tax-assessors had already adjudged to have made a return which would produce as much money for the State and county, or more, as the assessors thought was right and proper, the burden of paying the cost allowed by law to a sheriff for serving the notices. This would be unreasonable—to make citizens and taxpayers who had done no wrong pay the cost of a useless investigation. The sheriff, however, is entitled to the cost fixed by the fee bill (Ga. L. 1918, p. 226; Code, § 5997), and for his trouble and expense he is entitled to receive $3 for the service of the notice in each instance. Would not this cost fall upon the county, if the board of tax-assessors be treated as county officers, or upon the State and county, if they be considered as agents of the State as well as of the county? In either event, the circumstances of this case demonstrate that the purpose of the General Assembly in the passage of this act, which was to increase and equalize taxes, would be defeated, because the effect of the service of non-productive notices might exceed the gains which the legislature hoped to make in increasing the revenues of both the State and the counties. It is true that mandamus is a remedy which may generally be applied to compel the performance of any duty prescribed by law on the part of the officer whose duty it is to perform the act. But we are of the opinion that the judge was right, for the reasons we have already stated, in so construing the apparently plain verbiage of section 6 of the act of 1913 as to effectuate the intention of the General Assembly, in the light of the old law, the evil to be corrected, and the end to be attained in the proposed remedy.

*Judgment affirmed.    All the Justices concur.*