## CLAXTON *et al. v.* JOHNSON COUNTY.

No. 14121.   MAY 26, 1942.

44

*Claxton & Claxton* and *Hooper, Hooper & Miller,* for plaintiffs in error.

*W. C. Brinson,* contra.

GRICE, Justice. The only prayer of the petition, besides the one for process, was one that the resolution of the board undertaking to employ the plaintiffs in error be declared null and void, and that they be enjoined from appearing as attorneys for. Johnson County, and from interfering with another, as attorney in said case. The part of the prayer as to interference was incidental to the other, the entire relief sought being based on the contention that there had been no legal employment of the plaintiffs in error. The suit was bottomed on the theory that the resolution and the written agreement were void, that no contractual relationship sprang therefrom, that the effort to constitute them attorneys for the county was abortive, and that their appearance as counsel for the county was unauthorized. While the petition does not use the word "interlopers," the effect of the position taken by the county, if it were sustained, would make them such. This much has been said be-

cause it should be made clear that the case presents no issue as to the right of a client to discharge an attorney with or without cause, or whether such right, if it exists, can be exercised under the facts of this record, or, if exercised, what obligation, if any, would remain on the county as to compensation of the attorneys, either on a quantum meruit basis or otherwise. The county is not seeking to discharge the attorneys, or asking for any relief on the ground that they have been discharged. Employment must precede discharge, and the attack denies that any employment resulted from the resolution which they seek to have declared null and void. It would be improper for the court to grant relief not embraced within the pleadings and prayers, and gratuitous to assume that the county would wish to discharge them if its contentions as to the effect of the resolution of the board and the agreement entered into thereunder should not be sustained. The purported obligation of the five attorneys was joint. Two of them were related within the third degree of consanguinity to one of the three members of the board of commissioners who represented the county, the other party to the agreement. It is insisted that under section 19 of the act approved February 3, 1939 (Ga. Laws 1939, p. 627 et seq.), the alleged employment was null and void. The section reads as follows: "Be it further enacted by the authority aforesaid, that said board shall make no contract for service or for the purchase of any article or material whatsoever with any person who is related to any of its members within the third degree of consanguinity or affinity; and wherever practical, all purchases of equipment, material and supplies shall be purchased by competitive bids." This is taken from an act creating a board of commissioners of roads and revenues for Johnson County, and placing the management of the fiscal affairs of the county in said board. Section 16, after stating that the board shall have and exercise all powers heretofore vested in the ordinary of said county when sitting for county purposes, and the power to select all minor officers of the county whose election or appointment is not otherwise fixed by law, further declares that "such board shall have the authority to employ a competent attorney at law, resident of the county, as county attorney to advise the board and represent the county in such matters as the board of commissioners may direct, who shall be paid such salary or compensation as the board of commissioners

may direct, out of the regular funds of the county, with authority of said board of commissioners to fix his term of office or to discharge him at any time. . . Relationship of attorney to any board member shall not be a disqualification of said attorney to serve as county attorney."

In this connection it is insisted that each of the plaintiffs in error, three of whom are alleged to be residents of Fulton County, can not, from the mere attempt of the board to employ them in one case, be held to be a county attorney within the meaning of the act. · Such apparently was the ruling of the Court of Appeals, one Judge dissenting, in *Rainey* v. *Marion County,* 63 *Ga. App.* 35 (10 S. E. 2d, 258). In our opinion the legality of the employment with which we are here concerned is to be determined, not by the language of the act with respect to the employment of a county attorney, but by a proper meaning to be given to the language used in section 19, construed in connection with the entire act, including the one next above quoted. Under the general law the county authorities had the power to employ attorneys to represent it in the suit referred to in the resolution. *Decatur County* v. *Roberts,* 159 *Ga.* 528, 533 (126 S. E. 460). The power to control the fiscal affairs of a county carries with it the power to employ counsel. *Templeman* v. *Jeffries,* 172 *Ga.* 895, 899 (159 S. E. 248). To decide which counsel to employ is to exercise a discretion. In so far as it may have been within the discretion of the commissioners to engage the services of these particular attorneys, such discretion will not be controlled, unless there be a manifest abuse thereof. Compare *Van Valkenburg* v. *Stone,* 172 *Ga.* 642 (158 S. E. 419). Unless the special act defining the powers of these commissioners forbids them to employ such as are related to one or more of them within the third degree, this employment can not be treated as null and void. In *Robitzsch* v. *State,* 189 *Ga.* 637 (7 S. E. 2d, 387), it was held that the section of a special act relating to the board of commissioners of Ben Hill County, which prohibited them from purchasing materials from themselves, was subject to the rule of strict construction. The section places a restriction on the right of the county authorities to contract in behalf of the county for services and for the purchase of materials, thereby abridging their power to handle the fiscal affairs of the county. The meaning to be given the words "contract for serv-

ice," as used in section 19 of the act, must be arrived at, keeping in view the principles above stated. An exception to the general rule that the use of plain and unequivocal language in a legislative enactment obviates any necessity for judicial construction is presented by the use of words the meaning of which in general acceptation is apparently obvious, and yet the purpose of the legislature would be defeated were the words employed construed literally. *Board of Tax-Assessors of Decatur County* v. *Catledge,* 173 *Ga.* 656 (160 S. E. 909); *Gazan* v. *Heery,* 183 *Ga.* 30 (187 S. E. 371).

In section 16 of the act it is provided that relationship to a board member shall not be a disqualification to serve as county attorney. This is the section that vests in the board authority over county matters and county finances. Since the act declares that relationship shall be no bar to serve as the regular county attorney, who, it may be assumed, is to represent the county generally, it would be reasonable to suppose that the greater includes the less, and that less reason would exist for including a provision that relationship would be a bar to an attorney's accepting employment in one particular lawsuit. Section 19 is not the only place where occurs the statement that the board shall make no contract for service with any one related to a board member. Section 26 provides that "said board of commissioners shall make no contract for service to be performed with any person who is related to the county superintendent of roads or county warden within the third degree of consanguinity or affinity." The words "shall make no contract for service" occur in both sections, and each is a part of a section limiting the right to contract for service by any one related, in the one case to a member of the board, and in the other to the road superintendent or county warden. There is no reason to conclude that "contract for service" was intended to have two different meanings. If the words "contract for service" be construed to mean as counsel for the defendant in error apparently insist, then logically it should be held that the board could not on behalf of the county employ in a single case any lawyer who was related to the county warden within the third degree of consanguinity or affinity.

Is the alleged employment shown by this record "a contract for service," as those words are used in the act? The context of these words as they occur in section 19, which is the one relied on, is that

the "board shall make no contract for service or for the purchase of any article or material whatsoever; . . and wherever practical, all purchases of equipment, material, and supplies shall be purchased by competitive bids." Here the lawmakers are putting services in the category of nails, lumber, and other supplies, which can be bought and sold in the open market by competitive bidding or at public outcry. A contract to build a stockade would mean a contract for services. So would a contract to move so many cubic yards of earth. If either were to be done according to plans or specifications, there need not be much choice as to whom the contract would be awarded, the lowest bidder being generally the determining factor. The manner in which the service was performed, and a decision as to whether it was done according to the contract, so that the contractor would be paid, is a matter that would have to be determined by the board; and just here would be a point where honest men might differ, and unconsciously swayed in their judgment in resolving doubts in favor of a kinsman. The statute was intended to deliver the board member from temptation in such matters. The reason for enacting that the power to enter into contracts requiring no special skill, contracts in which the personnel of the contracting party would not be the dominating thing to be considered, should, along with the purchase of such equipment, material, and supplies as a county might need, be limited to those who were not related to the board members, does not apply here. A resolution by the commissioners to employ lawyers to represent the county in litigation in a distant county, and an agreement in writing signed by the parties thereto, pursuant to the resolution, is not the kind of contract for services contemplated by section 19 of the act. It is more than a contract for services. The engagement of counsel does not create the relation of master and servant. Compare 1 Labatt's Master and Servant, §§ 2, 3, and notes. A lawyer is employed, not hired. The employment carries with it duties and obligations apart from serving the client. He represents the client. Notice to him is in most instances notice to the client. He may make waivers binding on the client. He may acknowledge service for the client. He may make many decisions in the progress of the litigation which may affect its course and its result. The relationship binds him not to represent other interests antagonistic to the rights of his client in that particular case. The

law will not permit him to divulge, even on the witness-stand, any information received by him from the client which was obtained by virtue of the confidential relationship existing between them.

The word "service" has different meanings. Dayton v. Ewart, 28 Mont. 153 (72 Pac. 420, 422, 98 Am. St. R. 549). Webster's International Dictionary gives thirty separate meanings of the noun "service." The first definition is "The occupation, condition, or status of a servant," etc. The second is "Performance of labor for the benefit of another, or at another's command; attendance of an inferior, hired helper, slave," etc. It is also commonly used to denote the furnishing of water, heat, light, and power, etc., by public-utility companies. The service referred to in section 19 of the act contemplates only such services as would be in the nature of commodities whose value might be standardized or acquired on a competitive basis. The professional services of an attorney are not services of that character. The attorney not only serves his client, but the court also, and through the court he serves in a measure the public. "As was said by Lord Holt, 'the office of an attorney concerns the public, for it is the administration of justice;' and Ryan, C. J., says that 'attorneys and counselors of a court, though not properly *public* officers, are quasi officers of the State whose justice is administered by the court." Mechem on Public Officers, § 29.

It is accordingly ruled that there is nothing, either in the general law, or in section 19 of the local act above referred to, that renders null and void the employment of these attorneys by the County of Johnson, acting through its board of commissioners. It was therefore error to overrule the demurrer and to grant the injunction.       *Judgment reversed. All the Justices concur.*