20380. OXFORD, State Revenue Commissioner, *et al. v.* NEHI CORPORATION.

Argued March 9, 1959—Decided April 9, 1959— Adhered to on Rehearing May 8, 1959— Rehearing denied June 5, 1959.

*Eugene Cook, Attorney-General, Ben F. Johnson, Jr., Robert H. Walling, John M. Bowling, Deputy Assistant Attorneys-General,* for plaintiffs in error.

*Swinson, Elliott & Schloth, J. Robert Elliott, Willis Battle,* contra.

*John Izard, Furman Smith,* for parties at interest not parties to record.

ALMAND, Justice. This case originated in a suit by Nehi Corporation against the State Revenue Commissioner to recover stated sums alleged to have been collected illegally or erroneously by the Commissioner as income taxes for the years 1950-1954 inclusive. The case was tried by the court without the intervention of a jury upon the following agreed stipulation of facts:

1. "Plaintiff is a Delaware corporation with its principal office located in Columbus, Muscogee County, Georgia. The principal business of Plaintiff is the manufacture and sale of flavor concentrates used by bottlers in the production of soft drinks. These concentrates are manufactured by Plaintiff solely at its plant in Columbus, Georgia. Plaintiff maintains inventories of these concentrates at its plant in Columbus, Georgia, and also at a warehouse owned and operated by Plaintiff in Los Angeles, California.

2. "Plaintiff's only customers are bottlers of soft drinks located in all of the forty-eight states and various foreign countries, and substantially all of its orders for flavor concentrates are received by mail from these bottlers.

3. "Plaintiff derives its income from the manufacture and sale of tangible personal property and is entitled to use the three factor formula prescribed by Code Section 92-3113 (4) in the allocation and apportionment of its income. No questions exist between the parties with respect to the amount of Plaintiff's total net income for each of the tax years in question, or the 'average inventory ratio' or the 'salaries and wages ratio' of the apportionment formula; the only question is with respect to the make-up of the 'gross receipts ratio', under Code section 92-3113 (4) (c) and the facts here stipulated.

4. "During each of the tax years in question, Plaintiff's gross receipts were derived from three types of shipments of the con-

centrates which it manufactured for sale: (a) Shipments from its Georgia plant to bottlers located in Georgia; (b) shipments from its Georgia plant to bottlers located in states other than Georgia and various foreign countries; and (c) shipments from its California warehouse to bottlers located in states other than Georgia.

5. "All shipments from its Georgia plant, irrespective of destination, were made pursuant to orders received, accepted and handled entirely at Plaintiff's principal office in Columbus, Georgia.

6. "Substantially all of Plaintiff's shipments were effected by common carriers, and the Plaintiff prepaid transportation charges thereon. Most of such shipments were made on bills of lading which named Plaintiff as consignee and which were attached to sight drafts drawn against the bottler for whom the shipments were intended; such bills of lading, with drafts attached, were forwarded to local banks for collection, and when collected, the bills of lading were endorsed to the bottler who could then claim the shipment from the carrier. In all cases Plaintiff assumed the responsibility for shipments lost or damaged in transit and, with respect to all shipments, it was agreed between Plaintiff and its customers that the products shipped by Plaintiff would be actually delivered to its customers at destination, Plaintiff retaining title until the shipments reached their destination.

7. "For each of the tax years in question, Plaintiff filed its Georgia income tax returns with the State Revenue Commissioner and computed and paid its income taxes on the basis of including as gross receipts from business done in Georgia the gross receipts from all shipments made from its Georgia plant irrespective of the destination of such shipments (i.e. the gross receipts described in (a) and (b) of paragraph 4) and excluding therefrom the gross receipts from all shipments made from its California warehouse (i.e. the gross receipts described in (c) of paragraph 4). At no time has the State Revenue Commissioner disputed Plaintiff's returns for these years with respect to this make-up of the gross receipts factor.

8. "On May 29, 1956, Plaintiff filed with the State Revenue Commissioner claims for the refund of a portion of the taxes

paid as aforesaid. In these claims, Plaintiff took the position for the first time that its gross receipts from business done in Georgia included only the gross receipts from shipments made from its Georgia plant to its bottlers located in Georgia (i.e. gross receipts described in (a) of paragraph 4); this decision was prompted by the decision of the Court of Appeals in State of Georgia vs. Coca Cola Bottling Co., 93 Ga. App. 609, decided February 23, 1956; rehearing denied March 15, 1956.

9. . . "On November 8, 1956, the State Revenue Commissioner denied the aforesaid claims for refund on the grounds that the aforesaid decision of the Court of Appeals, having been reversed by the Supreme Court, 212 Ga. 630, was not controlling.

10. "For each of the tax years in question, Plaintiff returned and paid state income taxes in Georgia, Alabama and California; the income tax liability to Alabama was incurred by reason of Plaintiff's operating there a bottling plant separate from its concentrate business.

11. "The only issue in this case is whether, under the facts here stipulated as applied to Code section 92-3113 (4) (c), gross receipts from business done in Georgia includes only gross receipts from shipments made from Plaintiff's Georgia plant to its Georgia bottlers (i.e. only the gross receipts described in (a) of paragraph 4), as contended by Plaintiff, or whether it includes all gross receipts from shipments made from its Georgia plant to both its Georgia bottlers and to its bottlers located in other states and foreign countries (i.e. the gross receipts described in both (a) and (b) of paragraph 4), as contended by Defendants."

A judgment was rendered in favor of the taxpayer, and affirmed by the Court of Appeals (two judges dissenting), *Oxford v. Nehi Corporation*, 98 *Ga. App.* 779 (106 S. E. 2d 857). This court granted the Revenue Commissioner's petition for the writ of certiorari.

The controlling question in this case is the meaning and effect of subsection (4) (c) of section 1 of the act of 1950 (Ga. L. 1950, p. 299), which amended Code (Ann.) § 92-3113. Said subsection reads as follows: "Gross receipts ratio. The ratio of gross receipts from business done within this State to total gross receipts from business done everywhere. For the purposes of

this section receipts shall be deemed to have been derived from business done within this State only if received from products shipped to customers in this State, or delivered within this State to customers, and in determining the gross receipts within Georgia, receipts from sales negotiated or effected through offices of the taxpayer outside the State and delivered from storage in the State to customers outside the State shall be excluded." Subsection (4) (c) is the third factor in the three-factor formula for the apportionment of corporate income where the income is derived from the manufacture, production or sale of tangible personal property. The portion of net income therefrom attributable to property owned or business done within the State of Georgia is the portion arrived at by the application of this three-factor formula.

The Revenue Commissioner contends that this subsection, when construed with the whole of Code (Ann.) § 92-3113 and Code (Ann.) § 92-3002(n), means that, where products are produced, manufactured or stored in this State and shipped to customers outside this State, the gross receipts derived therefrom are to be included in the Georgia gross receipts unless the sales for such products were negotiated or effected through offices of the taxpayer outside the State. The taxpayer contends that the receipts which are to be included in the numerator of the Georgia gross-receipts ratio are, first, all receipts from products shipped to customers in this State, and, second, all receipts from products delivered within this State to customers; and that the character of the receipts is not determined as to where the sale of the products was negotiated or where title to the products passed.

A brief history of the Three-Factor Formula will be helpful in determining the meaning of Code (Ann.) § 92-3113(4)(c). The first Income Tax Law of 1929 (Ga. L. 1929, p. 92) did not provide for the apportionment of corporate income by the use of any formula. The Income Tax Act of 1931 (Ga. L. 1931, Ex. Sess., pp. 24, 36) provided for the allocation and apportionment of corporate income as follows: "Where income is derived from the manufacture or sale of tangible personal property, the portion thereof attributable to business within the State

shall be taken to be such percentage of the total of such income as the tangible property and business within the State bear to the total tangible property and total business, the percentage of tangible property and of business being separately determined and the two percentages averaged." This provision was re-enacted in the amendment of 1935 (Ga. L. 1935, pp. 121, 132). Many provisions of the income-tax acts of 1931 and 1935 were repealed or amended by the act of 1937 (Ga. L. 1937, p. 109). Section 9 of this act completely repealed and replaced Code (Ann.) § 92-3113, as amended by the 1935 act, and adopted for the first time the Three-Factor Formula for apportioning corporate income. The factors were: (1) Tangible property ratio, (2) Manufacturing cost ratio, and (3) Sales ratio. The provisions as to sales ratio read as follows:

"3. Sales Ratio. The ratio of the total sales made through or by offices, agencies, or branches located in Georgia during the income year to the total net sales made everywhere during said income year. The tangible property ratio, the manufacturing cost ratio, and the sales ratio being separately determined and the three percentages averaged.

"d. Where income is derived principally from the holding and/or sale of tangible personal property having a taxable situs in this State, the taxable income shall be apportioned as follows:

"1. Real estate and tangible personalty. The ratio of the value of its real estate and tangible personal property in this State on the date of the close of the income year of such company to the value of its entire real estate and tangible personal property then owned by it with no deduction on account of incumbrances thereon.

"2. Sales. The ratio of the total sales made through or by its offices, agencies, or branches located in Georgia during the income year to the total sales made everywhere during said income year. The tangible property ratio and the sales ratio being separately determined and the two percentages averaged."

Section 1(n) of this act defined the word "sale or sales" as follows: "The word 'sale or sales' wherever appearing in this Act for the purpose of apportioning net income to Georgia shall be deemed to be the total value of all sales made through or by

the offices, agencies, or branches located within this State, regardless of the destination." Section 5 of the amending act of 1941 (Ga. L. 1941, pp. 210, 215) struck Code (Ann.) § 92-3113 as amended, and enacted a new section as to allocation and apportionment of corporate income. The Three-Factor Formula under this act provided for the apportionment of income according to (1) Tangible property ratio, (2) Salaries and wages ratio, and (3) Sales ratio. Subsection 5 (3) (c) provided (p. 217): "Sales Ratio—The percentage which the sales made within this State and through, from or by offices, agencies, branches or stores within this State is to the total sales wherever made. For the purpose of this section, in determining the amount of sales made within Georgia, there shall be excluded therefrom, sales negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, connected with or sent out from premises owned or rented outside the State by the taxpayer or by his agents or agencies for the transaction of business, and sales otherwise determined by the Commissioner to be attributable to the business conducted on such premises." This act did not carry forward the provision of the act of 1937 that the sales ratio is "The ratio of total sales made through or by its offices, agencies or branches located in Georgia during the income year to the total sales made everywhere during said income year." The act of 1950 (Ga. L. 1950, pp. 299, 300) again struck Code (Ann.) § 92-3113 as amended, and inserted a new section wherein the Three-Factor Formula was again changed. The new three factors were: (1) Average inventory ratio, (2) Salaries and wages ratio, and (3) Gross receipts ratio. This act has been effective since the date of its adoption.

It is clear that the General Assembly in adopting the "Gross receipts ratio" as one of the three factors in apportioning corporate-income tax, substituted the factor of gross receipts for that of sales by providing that such receipts be derived from products shipped to customers in this State or delivered within the State to customers, in lieu of the prior provision as to where the sales were negotiated or effected. Code (Ann.) § 92-3113 (4) (c), which reads: "For the purposes of this section receipts shall be deemed to have been derived from business done within

this State only if received from products shipped to customers in this State or delivered within this State to customers," simply means that receipts from products shipped to customers outside of this State or delivered to customers outside of this State shall not be included as being Georgia receipts. The remaining words of this section are, "and in determining the gross receipts within Georgia, receipts from sales negotiated or effected through offices of the taxpayer outside the State and delivered from storage in the State to customers outside the State shall be excluded." The receipts referred to here, being receipts for sales effected outside of the State for products delivered to customers outside the State, have no reference to the kind of receipts referred to in the first part of the paragraph, and do not include, limit, exclude or affect the receipts from "products shipped to customers in this State, or delivered within this State to customers."

Counsel for the Commissioner insists that the definition of the word "sale or sales" as contained in the act of 1937 (Ga. L. 1937, pp. 109, 114; Code, Ann., § 92-3002(n)), to wit: "The word 'sale or sales' wherever appearing in this Act for the purpose of apportioning net income to Georgia shall be deemed to be the total value of all sales made through or by the offices, agencies, or branches located within this State, regardless of the destination," has never been repealed and should be construed with Code (Ann.) § 92-3113(4)(c); and that, when the two sections are thus read together, the taxpayer is liable regardless of the destination of the goods, since the receipts in question were from sales made through or by its offices, agencies, or branches located within the State. The definition as to "sale or sales" was set out in the act of 1937, which established the "Sales Ratio" as one of the three factors in apportioning income, and was applicable as long as the "Sales Ratio" was a factor, but the act of 1950 substituted the "Gross Receipts Ratio" in place of the "Sales Ratio," and the word "sales" is not mentioned in Code (Ann.) § 92-3113(4)(c), except as to goods in storage. This definition as set out in Code (Ann.) § 92-3002(n) has no application to the meaning of the present Code (Ann.) § 92-3113(4)(c).

The cases of *State of Ga.* v. *Coca-Cola Bottling Co.*, 212 *Ga.* 630 (94 S. E. 2d 708), and *State of Ga.* v. *Coca-Cola Bottling*

*Co.*, 214 *Ga.* 316 (104 S. E. 2d 574), did not involve the use of the Three-Factor Formula and are of no value here as precedents.

The Court of Appeals held that the instant case was controlled by its ruling in *State of Ga.* v. *Coca-Cola Bottling Co.*, 93 *Ga. App.* 609 (92 S. E. 2d 548). The judgment in that case on certiorari to this court was reversed (*State of Ga.* v. *Coca-Cola Bottling Co.*, 212 *Ga.* 630, supra), and the judgment in that case was vacated (*State of Ga.* v. *Coca-Cola Bottling Co.*, 94 *Ga. App.* 506, 95 S. E. 2d 33). This court, in referring to the ruling in *State of Ga.* v. *Coca-Cola Bottling Co.*, 93 *Ga. App.* 609, supra, said, "the ruling on the demurrer resulted in all other portions of the Court of Appeals opinion becoming completely void." *State of Ga.* v. *Coca-Cola Bottling Co.*, 214 *Ga.* 316, 322, supra. The case reported in 93 *Ga. App.* 609, supra, is of dubious vitality as a precedent. However, the Court of Appeals arrived at the correct result, and its judgment upholding the judgment of the trial court is affirmed.

*Judgment affirmed. All the Justices concur except Duckworth, C. J., Head and Hawkins, JJ., who dissent.*

DUCKWORTH, Chief Justice, dissenting. Our decision in *State of Georgia* v. *Coca-Cola Bottling Co.*, 214 *Ga.* 316 (104 S. E. 2d 574), was a forthright holding in harmony with Code (Ann.) § 92-3113 (Ga. L. 1950, pp. 299, 300), that upon all net profits resulting from business conducted from an office and place of business located in Georgia, a corporation was liable under the law to the State for income tax. Despite the fact that our equally forthright decision in *Stockham Valves & Fittings* v. *Williams*, 213 *Ga.* 713 (101 S. E. 2d 197), holding, that from business conducted from the corporation's office outside this State net profits realized from the sale of goods delivered in this State were not subject to the income-tax laws of Georgia, was overruled in Williams v. Stockham Valves & Fittings, 358 U. S. 450 (79 S. Ct. 357, 3 L. Ed. 2d 421), this court should continue to endeavor to construe the statute in accordance with long-established rules of construction, repeatedly and consistently followed by this court. It is tremendously important to both the State and to taxpayers that this court construe this tax law in a clear-cut manner that will remove doubts as to its meaning, or

open to question the precise meaning of our decisions. The law in Code (Ann.) § 92-3113, supra, indisputably supplies the ingredient of the cardinal rule for the construction of statutes, which is effectuating the legislative intent. *Torrance* v. *Mc-Dougald*, 12 *Ga.* 526; *Erwin* v. *Moore*, 15 *Ga.* 361; *Board of Tax Assessors* v. *Catledge*, 173 *Ga.* 656 (160 S. E. 909); *Gazan* v. *Heery*, 183 *Ga.* 30 (187 S. E. 371, 106 A.L.R. 498); *Carroll* v. *Ragsdale*, 192 *Ga.* 118, 120 (15 S. E. 2d 210; *Claxton* v. *Johnson County*, 194 *Ga.* 43 (20 S. E. 2d 606); *Williams* v. *Bear's Den*, 214 *Ga.* 240 (104 S. E. 2d 230). That intention is to tax the entire net income derived from property owned or business done in this State. That intent is repeatedly expressed in the following excerpts from Code (Ann.) § 92-3113: "The tax imposed by this law shall apply to the *entire net income.*" (Italics ours.) Again: "If the entire business income of the corporation is derived from property owned or business done in this State, the tax shall be imposed on the *entire business income,* but if the business income of the corporation is derived in part from property owned or business done in the State and in part from property owned or business done without the State, the tax shall be imposed only on *that portion* of the business income which is reasonably attributable to the *property owned and business done within the State.*" (Italics ours.) Not only do these legislative expressions of the intent of the law demand a construction that subjects all net income derived from business done in this State to the tax imposed, they forbid a construction that would subject the entire net income of a corporation such as in *State of Georgia* v. *Coca-Cola Bottling Co.,* 214 *Ga.* 316, supra, and then discriminate in favor of a corporation, such as the taxpayer in this case, which derived a part of its income from business done without this State by exempting from the tax a portion of the net income, undeniably derived from business done in this State. What conceivable motive could the legislature have had in thus discriminating against a corporation that gives its full loyalty to Georgia and in favor of one which divides its loyalty by establishing a place of business in another State? Such legislative favoritism would be a bold, brazen legislative inducement to all corporations to move a part of their business out of Geor-

gia. It would be giving up taxes clearly collectible, and to that extent defeat the single purpose of the law. It would seem that the legislature further refutes any idea that it entertained any such intent when it went beyond any theretofore judicial definition of doing business to define that term as used in the law as follows: "Every corporation shall be deemed to be doing business within this State if it engages within this State in any activities or transactions for the purpose of financial profit or gain." Only by am arbitrary disregard of these unambiguous expressions by the legislature itself can it be denied that the legislative intent of this law is to impose the tax upon the *entire net income* of corporations derived from activities or transactions engaged in by the corporation in this State for profit or gain. Once the intention is thus ascertained beyond any doubt, the above-stated cardinal rule of construction commands this court to effectuate the same, and if need be to accomplish that end, disregard other verbiage in the law that, if given a literal meaning, would defeat the purpose of the law. The Constitution emphatically forbids discrimination. Art. 1, sec. 1, par. 2 (Code, Ann., § 2-102) provides that "Protection to person and property is the paramount duty of government, *and shall be impartial and complete.*" (Italics ours.) Then the Constitution, art. 7, sec. 1, par. 3 (Code, Ann., § 2-5403) provides in part that "All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." While the latter paragraph authorizes classifications, yet the law is settled that arbitrary classification of subjects of the same class is discrimination and void. *Hutchins* v. *Howard*, 211 *Ga.* 830 (89 S. E. 2d 183); *Wright* v. *Fulton County*, 169 *Ga.* 354 (150 S. E. 262). It would be indeed amusing to hear any reason suggested why two corporations earning income by doing business in Georgia, should be treated differently under this tax statute in a way that would exempt income of one derived in precisely the same manner as taxed income of the other from business done in this State, solely because the one had a place of business also in another State. There simply exists no legal difference. It is the duty of all courts when the verbiage will permit to give a statute a construction that will render it constitutional rather

than unconstitutional. *Evans* v. *Evans*, 190 *Ga.* 364 (9 S. E. 2d 254); *DeWitt* v. *Richmond County*, 192 *Ga.* 770 (16 S. E. 2d 579).

But the majority have glibly passed over the heart of the statute, the portion that levies the tax and plainly expresses the intent to levy it upon the "entire net income" derived from business done in this State. They pass over the part which states that, when income is derived from business done in this and another State, the portion subject to Georgia taxation shall be that portion which is *"reasonably attributable"* to business done in Georgia. They seize upon verbiage used in defining gross-receipts ratio in Code (Ann.) § 92-3113 (4c), which is as follows: "For the purpose of this section receipts shall be deemed to have been derived from business done within this State only if received from products shipped to customers in this State, or delivered within this State to customers." This is only part of the sentence, but they seek to chop it off with the portion quoted and plant the entire case thereon. The continuation of this same sentence is, "and in determining the gross receipts within Georgia, receipts from sales negotiated or effected through offices of the taxpayer outside the State and delivered from storage in the State to customers outside the State shall be excluded." This latter portion of the sentence recognizes, as does the first portion of the law, that "negotiated or effected" is the activity or transaction connected with the business which fixes the situs for taxation. The first part of this one sentence utterly disregards the negotiation or effectuation of sales producing the income, and in this respect it contradicts the latter portion of the same sentence and completely defeats the indisputable intention of the whole law to tax the *entire net income* derived from such negotiation or effectuation. The portion upon which the taxpayer relies forbids counting as Georgia income all except that derived from shipments to customers in this State or delivered to customers in this State. Then the latter portion follows immediately with an exclusion of goods shipped to customers outside this State. If the first portion be construed as contended by this taxpayer, then the last portion of the same sentence is completely useless, meaningless, and repetitious. Courts should never construe an enact-

ment to be meaningless and nonsensical to the point of destroying its true intent unless as a whole its provisions demand such a construction. *Lamons* v. *Yarbrough*, 206 *Ga.* 50 (55 S. E. 2d 551). As has been held in a number of the decisions of this court hereinbefore cited on rules of construction, to effectuate the legislative intention "large and extensive expressions" expressing the legislative intent shall prevail over "any particular clause" expressing not so large and extensive an import. *Torrance* v. *McDougald*, 12 *Ga.* 526, supra. And in *Erwin* v. *Moore*, 15 *Ga.* 361, 364, supra, "Wherever the intention of the legislature can be discovered, it should be followed with reason and discretion, though such construction should seem *contrary to the letter of the statute*." (Italics ours.) And in *Board of Tax Assessors* v. *Catledge*, 173 *Ga.* 656, supra, and repeated in *Gazan* v. *Heery*, 183 *Ga.* 30, 39, supra, courts may decline to give legislative acts such construction as will defeat the purpose of the General Assembly, and in exercising this power, to refuse such construction as will defeat the legislative purpose, they may avoid portions of the enactment. Again in *Carroll* v. *Ragsdale*, 192 *Ga.* 118, 120, supra, it was said: "While all parts of the statute should be preserved, yet a cardinal rule of construction is that the legislative intent shall be effectuated, even though some verbiage may have to be eliminated. The legislative intent will prevail over the literal import of the words." With this array of our own decisions pointing out the true rule of construction, which gives pre-eminence to legislative intent, and commanding that clauses literally in conflict therewith be disregarded, the only sound and proper judgment in this case is perfectly obvious.

In imposing the tax upon the income reasonably attributable to business done in this State, then thereinafter in 4c ignoring all income except that only derived from goods shipped to customers in this State or delivered in this State to customers, the law is self-contradictory. It is a judicial function to construe ambiguous legislation, and the only true meaning it ever has is that given it by judicial construction. One type of ambiguity is that created by contradictory provisions. The Judiciary by construction gives such contradictory enactment its first and only true meaning. No matter how plain the conflicting clauses may be,

they are rendered unplain and ambiguous by the contradiction. And, as stated above, the cardinal rule of construction is effectuating the purpose and intent of the whole law, if such is possible from the provisions thereof. Here this rule demands a construction that will impose the tax which is manifestly the sole purpose of the law. A construction that defeats the tax as required by 4c defeats the purpose of the law, while a construction that would ignore 4c indisputably effectuates the intent and the purpose of the law. The judicial duty in such a case is too plain for argument.

The plain legislative intent to place the tax upon the "entire net income" derived from business done in this State should be effectuated by applying the tax to all such net income as can be reasonably attributable to business done in this State. To accomplish this end, the portion of 4c relied upon by the taxpayer to defeat this legislative intent should be either disregarded or else construed to harmonize therewith if its verbiage will stand such construction. Since, as above pointed out, the latter part of the same sentence spells out what must be excluded from the Georgia receipts, it could be held that receipts not thus excluded may be included, or the language relied upon might be construed to be that receipts derived from goods shipped on orders procured in Georgia to customers wherever located, which would harmonize with the real purpose of the law. Counsel for the Revenue Commissioner suggests a plausible and sound construction since the only division of receipts contemplated by the law is one between the places of business in this and the other State which produced the entire receipts. And since those receipts must be apportioned to one or the other of the taypayer's places of business, then preface the clause relied upon by what was undeniably in the legislative mind when it was enacted, which is "[as to foreign corporations 'doing business' in this State] only if received from products shipped to customers in this State, or delivered within this State to customers, and [as to local corporations] in determining the gross receipts within Georgia, receipts from sales negotiated or effected through offices of the taxpayer outside the State and delivered from storage in the State to customers outside the State shall be excluded." Code

(Ann.) ·§ 92-3113 (4c). This admittedly adds some words, but such is permissible under the law when necessary to effectuate the legislative intent.

A simple illustration of what the law will do when construed as the majority contend is as follows: If corporations A and B with principal places of business located in Georgia are competitors in identical lines of business, and each has a net income of $100,000, and only 10% or $10,000 of the net income of each is derived from delivery and shipment of goods to customers within this State, and A establishes another place of business in Alabama, from which sales are made and from which 1% or $1,000 of its net income is derived, B would have to pay to the State of Georgia taxes on its entire net income of $100,000, while A would pay Georgia taxes on the 10% of its net income which is $10,000, although it would pay Alabama taxes on only 1% or $1,000, and consequently A would pay no taxes on 89% or $89,-000, which it earned by activities or transactions in this State identical with the activities or transactions of B in this State. Such an injustice would shock the conscience, and would constitute such an overwhelming advantage of A over its competitor, as would surely result in quick bankruptcy of B. This shocking experience of a corporation would be the penalty a Georgia legislature imposed upon B for its full-fledged loyalty to Georgia by confining its place of business to Georgia, while A would be rewarded by the legislature for dividing its loyalty by putting some, even ever so small a part, of its business operations in another State.

As ruled in *Lamons* v. *Yarbrough*, 206 *Ga.* 50, supra, courts should never construe enactments to be thus nonsensical and unjust unless the whole act demands such. And, as ruled by the majority, the entire amount involved will escape taxation altogether, since it is agreed that none of it was produced by the place of business in California which is the only place of business of the taxpayer except that in Georgia. It had to be produced by one or the other place of business, and since admittedly it was not produced by the California place of business, it necessarily must have been produced by the Georgia place of business,

and the statute repeatedly expresses an intention to tax such net income in its entirety.

Failure of this court to recognize, respect, and enforce the legislative imposition of the tax can not be excused upon the claim that a legislative attempt to prescribe a method of ascertaining the income to be thus taxed, contradicts the description of the taxable income given in immediate connection with the imposition of the tax. It is trifling with legislation to say that, although its indisputable single purpose was to impose a tax, yet it preferred adherence to a formula it defined whereby it was thought the tax imposed could be arrived at, over the collection of the tax. The statutory language imposing the tax in cases like the instant one is as follows: "The tax *shall be imposed* only on that portion of the business income which is *reasonably attributable* to the property owned and business done within the State." (Italics ours.) There is a positive unambiguous imposition of the tax upon a readily ascertainable income. Must we prevent the State's collection of the tax thus plainly imposed because the legislature undertakes erroneously to describe a procedure for ascertaining the income upon which the tax is thus imposed? Can we in fairness to the legislature attribute to it an intention that its single objective which is to impose the tax be defeated in order that its palpably erroneous procedure, which defeats imposition of the tax, be adhered to? It constitutes the rankest sort of unreasonableness for this court to thus sacrifice substance for form. This is especially true when to do so renders the whole statute discriminatory and unconstitutional. A simple homely example will illustrate what reason and common sense dictate in this situation. If one gave a boy money to buy a package of cigarettes, and told him to go to a certain store by a certain street to get them, and the boy found that the street designated was a dead-end street, and he could never reach the store by traveling it, but he well knew how to get to the store by a known street, should the boy return without the cigarettes solely because he found he could not get there by traveling the street designated, or should he fulfill the true purpose of the sender and get the cigarettes? The street in this example is analogous to the directions in 4c, and the cigarettes are analogous to the taxes in

the instant case. Only an obstinate blindness to truth can prefer the designated street or the formula in 4c over the cigarettes or the taxes imposed on the income reasonably attributable to the business done in this State. Note well that the tax is imposed, not on the business reasonably *apportionable,* but on the business income reasonably *attributable* to business done in this State.

Thus the tax plainly imposed upon an income definitely described will go uncollected because of palpable error by the legislature in attempting to state a method for its ascertainment, upon which clause the majority opinion plainly rests. The majority have decided that what the legislature intended as an incidental effort to help effectuate its single objective should be given full literal effect, even though it defeats the sole purpose of the whole legislation, which is to impose a tax on income reasonably attributable to business done in this State. It is unreasonable to attribute such a trifling intention, and this court can do so only after abandoning all sound sensible rules of construction consistently followed in all previous cases.

By the construction given above we would not be writing legislation, but preserving the substance of legislation in the only way whereby any of it can stand a constitutional test. For all the foregoing reasons I dissent. Head and Hawkins, JJ., have authorized me to state that they concur in this dissent.