## 40466. UNDERCOFLER, Commissioner v. UNITED STATES STEEL CORPORATION.

DECIDED JANUARY 24, 1964.

*Eugene Cook, Attorney General, John E. Dean, Assistant Attorney General,* for plaintiff in error.

*King & Spalding, John Izard, William K. Meadow,* contra.

EBERHARDT, Judge. In the light of the Supreme Court's decision transferring the case here and the jurisdictional limitations of this court, only a question of statutory interpretation is presented.

Taxpayer, a multi-state corporation, insists that Georgia has taxed a greater portion of its income than can be related to its business transacted in this State and that a proper construction of the applicable portion of the income tax law (Ga. L. 1931, Ex. Sess., pp. 24, 34, as amended by Ga. L. 1950, pp. 299, 300) found in *Code Ann.* § 92-3113, and particularly in § 92-3113 (4-c), would result in a substantially lower taxable income in the years involved in this suit for refund—1953 and 1954. The portion of the statute to be construed provides: "Gross Receipts Ratio.—The ratio of gross receipts from business done within this State to total gross receipts from business done everywhere. For the purposes of this section receipts shall be deemed to have been derived from business done within this State only if received from products shipped to customers in this State, or delivered within this State to customers, and in determining the gross receipts within Georgia, receipts from sales negotiated or effected through offices of the taxpayer outside the State and delivered from storage in the State to customers outside the State shall be excluded."

It is conceded by the Revenue Commissioner that the sales from which the gross receipts are alleged to have arisen were negotiated outside the State with the goods being delivered to customers in Georgia or shipped to them F.O.B. the Taxpayer's out-of-state factory, that all credit arrangements and collections of accounts in connection therewith were handled from Taxpayer's offices out of this State, and that the goods were manufactured out of this State from raw materials procured elsewhere.

From this Taxpayer contends that the receipts arising from these sales, and in all events from those where the goods were shipped F.O.B. the out-of-state factory, are not includable as gross receipts in the Three Factor Ratio provided for allocating and determining the portion of Taxpayer's income taxable by the State of Georgia.

If the statute had not been amended in 1950 to change from sales to gross receipts in applying the Three Factor Ratio[1] the position of Taxpayer might have been well founded, for all or substantially all of the incidents of a sale in connection with the transactions involved did occur beyond the limits of this State. On that basis it might well have been concluded that they could not reasonably have been said to be identified with Taxpayer's income arising or flowing from its property owned and business done in this State. But we do not deal with a sales ratio. The General Assembly, after some thirteen years of experience in the application of the Three Factor Ratio including a sales factor, determined that a better, more reasonable and fair factor is that of gross receipts—and again we have seen some thirteen years of experience in its application.

We conclude, both from the language of the statute as it now appears and from its interpretation by the Supreme Court in *Oxford v. Nehi Corp.*, 215 Ga. 74 (109 SE2d 329), that the transactions from which the "gross receipts" arose here were properly included by the Commissioner in calculating the Three Factor Ratio and determining the portion of Taxpayer's net income reasonably attributable to its property owned and business done within and thus taxable by this State. The Supreme Court asserted (p. 80): "It is clear that the General Assembly in adopting the 'Gross receipts ratio' as one of the three factors in apportioning corporate-income tax, substituted the factor of gross receipts for that of sales by providing that such receipts be derived from products shipped to customers in this State or delivered within the State to customers, in lieu of the prior provision as to where the sales were negotiated or effected."

---

[1]For a history of the Three Factor Ratio formula in the income tax law to Georgia, see *Oxford v. Nehi Corporation*, 215 Ga. 74, 78 (109 SE2d 329).

In *Nehi* the converse of the situation presented here was dealt with in that all of the incidents of sale took place in Georgia but shipments were made to the taxpayer's customers at points out of the State. It was held that those transactions were not includable in "gross receipts" for the purpose of applying the Three Factor Ratio. The rationale of the decision is that the taxable nexus for gross receipts purposes is the *destination* of the goods.

We cannot agree with Taxpayer that the shipment of goods F.O.B. its out-of-state factory to customers in Georgia makes a difference in the application of this factor. While under the principles of law relating to *sales* there may be a difference as to when title passes to the customer, we do not here deal with the transactions as sales. This very matter may have been a consideration that prompted the General Assembly to drop the sales factor and substitute the gross receipts factor.

All of our sister States levying an income tax have adopted a formula, as a matter of necessity, for use in determining what portion of a nonresident corporate taxpayer's income is reasonably to be identified with its property owned and business done in the State and thus taxable. There have been and are variations in the formulas used. There is no requirement that they be the same, but that they be reasonable—though it could hardly be denied that uniformity would result in less of unfairness both to the States and the taxpayer in the levying of the tax. We think that the trend in most of the States is toward the adoption of the destination theory in connection with this factor of the ratio. It is significant that the National Tax Association, whose membership represents both taxpayers and tax administrators, after many years of considering the problem, asserted in its *Second Preliminary Report of the Committee on Tax Situs and Allocation* (1950): "The rule that sales should be allocated to the state of destination or to the state where possession of the goods is physically delivered to the purchaser . . . comes the closest to conforming with the purpose underlying the use of the sales factor." It was at about the time this report was made that the General Assembly adopted the gross receipts factor enabling the taxpayer and Commissioner to apply the simple rule of the destination of the goods.

Whether the goods be shipped freight prepaid or collect, F.O.B. the point of origin or some other place, F.A.S., C.I.F., C. & F. or C.O.D.[2] if the *destination* of the goods is the rule to be applied the result is the same.

The Commissioner relates the destination of the goods to the market as an essential element in the realization of income, citing an article by Charles F. Conlon, Executive Director, Federation of Tax Administrators, *"Management's Stake in Tax Administration,"* The Tax Institute, Inc. (1961), p. 207, in which it is asserted that "the very reasons which persuade one to accept a sales factor also support the provision that this factor should be set up on some basis related to the market" and that "there has been a perceptible movement in the direction of a destination-basis sales factor during the past few years." We think the Commissioner's position on this has substantial basis and merit. The fact that a manufacturer finds a market in Georgia where it may sell its goods does have an important relationship to its income for, as is pointed out in Bass, Ratcliff & Gretton v. State Tax Commission, 266 U.S. 271 (45 SC 82, 69 LE 282), "the process of manufacturing [results] in no profits until it ends in sales."

An additional consideration that may well have prompted the General Assembly to adopt the gross receipts or destination of the goods as an element in the Three Factor Ratio is that the taxpayer is free to vary other incidents of sales such as the solicitation of orders, the working out of credit arrangements, the keeping of accounts and records and the collection of accounts, so that they may occur at places beyond the State, but it is difficult and generally not possible to get the Georgia customer's business unless the goods are shipped to him here. The destination of the goods can not generally be varied. Consequently the relationship of Taxpayer's business to the Georgia market for its product can largely be established by the receipts from goods sent to customers in Georgia. This, together with

---

[2]For definitions of these terms see *Code Ann.* §§ 109A-2-319—109A-2-321; 13 CJS 382, Carriers § 186; 9 Am. Jur. 807, Carriers, §§ 648, et seq.

the other factors used in arriving at a basis for allocation of income seems fair to us and we should find nothing unreasonable about it as a proper interpretation of the statute even if we did not find that it must follow from the interpretation in the converse situation of *Oxford v. Nehi Corp.*, 215 Ga. 74, supra.

*Judgment reversed. Bell, P. J., and Jordan, J., concur.*