## A08A1375. CHILDREY v. THE STATE.

(670 SE2d 536)

PHIPPS, Judge.

Jerry Childrey was charged with three counts of aggravated sodomy, two counts of burglary, and one count each of aggravated assault, false imprisonment, aggravated sexual battery, and rape. Prior to trial, the state withdrew the rape count and one of the aggravated sodomy counts. At a jury trial, Childrey was convicted on one count each of aggravated sodomy and burglary, and he was acquitted of the remaining charges. For the aggravated sodomy conviction, Childrey was given the mandatory minimum sentence of twenty-five years imprisonment without possibility of parole followed by probation for life, and for the burglary conviction he was given a concurrent sentence of ten years imprisonment.

He moved for a new trial and charged his appointed trial attorney with ineffective assistance in failing to be aware and inform him of the mandatory minimum sentence he would receive if convicted of aggravated sodomy. He claims that if so informed, he would have accepted an offer by the state during the trial to plead guilty in exchange for a five-year sentence. Without making any express factual findings, the trial court denied Childrey's motion for new trial. Because the factual determinations implicit in the court's denial of Childrey's motion were not clearly erroneous, we affirm.

At trial, the victim gave testimony that conflicted in numerous respects with her pre-trial statements to police, as well as findings of medical personnel who had treated her; and the defense's challenge to her credibility found support in the testimony of law enforcement personnel.

After beginning deliberations, the jurors sent the court a note indicating that they had reached a unanimous decision on three of the charges but needed guidance on the remaining charges. While the jury was deliberating, the prosecutor approached defense counsel

and asked if he wanted to engage in plea discussions. Defense counsel responded in the affirmative. Initially, defense counsel related to the prosecutor Childrey's willingness to plead guilty in exchange for a probationary sentence. When the prosecutor promptly rejected that proposal, counsel suggested that Childrey might enter a guilty plea in exchange for a prison sentence of two to three years, but, upon consultation with Childrey, counsel informed the prosecutor that Childrey was not willing to do so.

Later during jury deliberations, the state offered to allow Childrey to plead guilty in exchange for a ten-year sentence. Childrey, with the concurrence of his defense attorney, quickly rejected that offer. Shortly thereafter, the state extended the offer for Childrey to plead guilty in exchange for the five-year sentence. After consulting with counsel for no less than five minutes but no more than thirty minutes, Childrey rejected that offer as well.

During sentencing, the state informed the court that, effective July 1, 2006 (about six months before commission of the crimes charged), Georgia law had been changed to provide for a twenty-five year mandatory minimum prison sentence for aggravated sodomy rather than a ten-year mandatory minimum sentence,[1] whereupon defense counsel acknowledged his lack of awareness of that change. He had erroneously informed Childrey, in accordance with prior law, that the mandatory minimum sentence for that offense was ten years imprisonment. But he had accurately informed Childrey that the maximum sentence for that offense was life imprisonment (under both pre-2006 and post-2006 Georgia law);[2] that he should not proceed to trial under the misapprehension that he would receive only the mandatory minimum sentence if convicted; and that the mandatory minimum ten-year sentence for aggravated sodomy, aggravated sexual battery, or rape could not be paroled.[3]

At the hearing on Childrey's motion for new trial, Childrey acknowledged his awareness of the maximum sentence to which he was subject, but he testified that he did not believe he would receive that sentence because he was innocent of the crimes charged and felt as though he would be found not guilty. Childrey testified that if defense counsel had informed him that he was facing a mandatory

---

[1] Compare OCGA § 16-6-2 (b) (2), as amended by Ga. L. 2006, pp. 379, 386-387, § 9, with OCGA § 16-6-2 (b), as amended by Ga. L. 1994, pp. 1959, 1963-1964, § 7.

[2] Under OCGA § 17-10-6.1 (c) (1) as amended in 2006, however, the minimum amount of time that must be served before a person who has received a life sentence becomes eligible for parole was increased from 14 to 30 years. See Ga. L. 2006, pp. 379, 393-395, § 20; Ga. L. 1998, pp. 180-181, § 2.

[3] See OCGA § 17-10-6.1 (b), as amended in 1998. Similarly, the current mandatory minimum 25-year sentence for these offenses cannot be paroled. See OCGA § 17-10-6.1 (b) (2), as amended in 2006.

minimum twenty-five year sentence rather than a mandatory minimum ten-year sentence, he would have accepted the state's offer to plead guilty in exchange for a five-year sentence.

Defense counsel testified that in discussing the state's final plea offer, he and Childrey had talked extensively about the likelihood that the jury had already acquitted him on three of the charges, thereby suggesting that the jury did not believe the complaining witness's testimony and giving rise to the likelihood of an acquittal on the remaining charges. They also considered the fact that there was a pending petition to revoke his probation for an aggravated assault conviction obtained through his entry of an *Alford* plea in 2002, and that his pre-trial incarceration would be credited toward any prison sentence he did receive. Counsel further testified that he had surmised that the jury had acquitted Childrey on the more serious charges carrying mandatory minimum sentences; that, in view of the state's plea offers, the prosecuting attorney must have reached the same conclusion; and that these factors came into play in his and Childrey's consideration of the state's final plea offer. According to counsel, "everybody who was in the courtroom," including himself, doubted the sufficiency of the evidence to support convictions of the crimes charged. In sum, the main topics of conversation between defense counsel and Childrey in considering the state's plea offer were how much of the five-year sentence he would have to serve and the likelihood of a conviction.

"In order to prevail on a claim of ineffective assistance of trial counsel, a defendant must show that his trial counsel's performance fell below an objective standard of reasonableness, and that the deficiency prejudiced the defense."[4] As for the prejudice prong, "the inquiry is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[5] A trial court's ruling on such a claim will be affirmed unless it is clearly erroneous.[6]

In *Lloyd v. State*,[7] the Supreme Court of Georgia recognized that "[o]bjective professional standards dictate that a defendant, absent extenuating circumstances, is entitled to be told that an offer to plead guilty has been made *and to be advised of the consequences of the choices confronting him*."[8] Defense counsel in *Lloyd* received an offer of a plea bargain from the state but did not communicate the offer to the defendant. In ascertaining whether the defendant has

---

[4] *Benham v. State*, 277 Ga. 516, 517 (591 SE2d 824) (2004) (citations omitted).

[5] Id. at 518 (citation omitted).

[6] *Winfrey v. State*, 286 Ga. App. 718, 723 (6) (650 SE2d 262) (2007).

[7] 258 Ga. 645 (373 SE2d 1) (1988).

[8] Id. at 648 (2) (a) (emphasis supplied).

been prejudiced by such an error, *Lloyd* requires an examination of the facts of each case to determine whether "there is at least an inference from the evidence that the defendant would have accepted the offer as made or something similar."[9]

As we have recently made clear in *Cleveland v. State*,[10] however, the above-quoted language from *Lloyd* does not alter the well-established "clearly erroneous" standard of review for ineffective assistance of counsel.[11] As held in *Cleveland*: "Simply because an inference could be drawn even where the evidence is disputed or unclear on this question, does not mean that a trial court is required to do so in cases where the evidence is disputed."[12] Moreover, other courts, recognizing the self-serving nature of a defendant's post-conviction testimony regarding his intent with respect to a plea offer, have required some further "objective evidence" that defendant would have accepted a plea offer.[13]

In *Muff v. State*,[14] as here, defense counsel related the state's plea offer to his client but did not accurately inform him of the mandatory sentence he faced if he went to trial and was convicted. *Muff* recognized that although the case involved "counsel's failure to advise his client regarding the consequences of rejecting a plea rather than failure to communicate a plea, the *Lloyd* analysis controls."[15]

Other courts have also recognized that "the decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case" and that "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."[16] Accordingly, *In re McCready*,[17] cited by Childrey, held that the defendant was denied his right to make an informed decision about whether to plead guilty when counsel failed to inform him of the minimum sentence that could be imposed for charged offenses. And *Williams v. Maryland*,[18] also cited by Childrey, found that counsel rendered deficient performance in failing to advise the

[9] Id. at 648 (2) (b) (footnote omitted).
[10] 290 Ga. App. 835 (660 SE2d 777) (2008).
[11] Id. at 840 (2).
[12] Id. (citation, punctuation and emphases omitted).
[13] See *United States v. Gordon*, 156 F3d 376, 380-381 (2d Cir. 1998).
[14] 210 Ga. App. 309 (436 SE2d 47) (1993).
[15] Id. at 311 (2).
[16] *Gordon*, supra at 380 (citations and punctuation omitted).
[17] 996 P2d 658 (Wash. App. 2000).
[18] 605 A2d 103 (Md. App. 1992).

defendant that rejection of the state's plea offer would expose him to a mandatory 25-year sentence.

*Whitehead v. State*,[19] however, in rejecting a claim that defense counsel was ineffective in failing to inform the defendant that he faced a mandatory life sentence, noted that the defendant had unquestionably been told that a life sentence was a possibility when he decided to reject a plea offer by the state and go to trial. *Whitehead* held that the defendant had been thereby adequately informed that the consequences of refusing the state's offer could be harsher than the consequences of accepting it.[20]

In reliance on *Whitehead*, *Sutton v. State*[21] held that the defendant was adequately apprised of the risks of going to trial even though, before trial, the trial court told him that the sentencing range for armed robbery was ten years imprisonment to life and then, upon conviction, gave him a statutorily mandated life sentence as a recidivist offender. Similarly, *Carson v. State*[22] rejected a claim that counsel was ineffective in failing to inform the defendant that he would receive a mandatory life sentence if convicted, noting that defendant had been advised by his attorney of the possibility of a life sentence and that the trial court had made him aware of the range of possible sentences he faced if he rejected the state's plea offer.

Childrey argues that his consideration of the state's plea offer of a five-year sentence, even under counsel's erroneous advice that the mandatory minimum sentence for the offense was ten years imprisonment without possibility of parole as opposed to a twenty-five year sentence without possibility of parole, raises the requisite inference that he would have accepted the offer if he had known of the actual consequences of its rejection. The state, on the other hand, argues that the court was authorized to find that because of Childrey's perceived likelihood that he would be acquitted of all charges and that he already had been acquitted of the offenses carrying mandatory minimum sentences, Childrey would not have pled guilty in exchange for any plea offer other than a probationary sentence. Childrey responds that his entry of an *Alford* plea years earlier that resulted in a four-year sentence followed by probation shows that he was amenable to a similar plea bargain here.

The opposing arguments advanced by the parties each find valid support in the record and thus presented factual matters primarily for resolution by the trial court. Thus, as in *Cleveland*, the evidence

---

[19] 211 Ga. App. 121 (438 SE2d 128) (1993).

[20] But cf. Uniform Superior Court Rule 33.8 (C) (4) (judge should not accept plea of guilty without first informing defendant on record of mandatory minimum sentence on charge).

[21] 263 Ga. App. 188, 189-190 (1) (587 SE2d 379) (2003).

[22] 264 Ga. App. 763 (592 SE2d 161) (2003).

"supports a finding, implicit in the trial court's ruling, that there was no reasonable probability that [Childrey] would have pled guilty but for counsel's ineffectiveness."[23] Therefore, "[b]ased on the evidence before it, the trial court was authorized to conclude that [Childrey's] claim that he would have accepted the plea lacked credibility. As a result, it did not err by rejecting his ineffective assistance of counsel claim."[24]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 26, 2008 — 

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

[23] *Cleveland*, supra at 839-840 (2) (citations and punctuation omitted); compare *Davis v. Murrell*, 279 Ga. 584, 587 (2) (619 SE2d 662) (2005) (habeas court's conclusion that petitioner did not carry burden of showing he would have chosen to go to trial but for counsel's errors was erroneous, where court's only accurate and relevant finding regarding issue of prejudice was that petitioner swore he would not have entered guilty plea had he not been misinformed about eligibility for sentence review and parole consideration).

[24] *Cleveland*, supra at 840.