## S09A1476. MERRITT v. THE STATE.

(690 SE2d 835)

HUNSTEIN, Chief Justice.

Thomas Merritt has been charged with the offenses of rape and false imprisonment based on events alleged to have occurred in February 2008. We granted Merritt's application for interlocutory appeal to address whether the trial court erred by denying his motion to declare unconstitutional OCGA §§ 16-6-1 (b) and 17-10-6.1, the sentencing statutes for the crime of rape. Merritt claims the sentencing scheme created by these statutes for first convictions of rape violates his due process and Sixth Amendment rights because the statutes are so vague that they fail to apprise him with sufficient clarity of the maximum sentence that may be imposed should he be convicted of violating OCGA § 16-6-1 (a), with the result that he is unable to knowingly and voluntarily decide whether to plead guilty to the rape charge or proceed to trial. We hold that these statutes are not unconstitutional for the reasons alleged by Merritt and therefore affirm.

OCGA § 16-6-1 (b) sets forth four sentencing options as punishment available for a person convicted of the offense of rape: death; imprisonment for life without parole; imprisonment for life; or "a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment."[1] Discussion of the first three options is relevant to Merritt's objections to the final sentencing option. The first option is not legally available in Georgia in that a death sentence cannot be imposed for a rape conviction. *Kennedy v. Louisiana,* 554 U. S. 407 (II) (128 SC 2641, 171 LE2d 525) (2008); *Coker v. Georgia,* 433 U. S. 584 (III) (97 SC 2861, 53 LE2d 982) (1977). As to life without parole, we have held based on the language of OCGA §§ 17-10-16 and 17-10-32.1 that life without parole cannot be a punishment for rape under that statute. *State v. Velazquez,* 283 Ga. 206 (657 SE2d 838) (2008). Merritt does not take issue with the sentencing option of life imprisonment[2] but instead challenges the term of years option, i.e., "for not less than 25 years and not exceeding life imprisonment." OCGA § 16-6-1 (b). Regarding that

---

[1] OCGA § 16-6-1 was amended in 2006 to substitute the final option in lieu of the previous ten to twenty year sentence, as provided in Ga. L. 1996, p. 1115, § 1.

[2] Pertinent to Merritt's case, a person sentenced to life imprisonment is eligible to be considered for parole after serving a minimum of 30 years in prison. OCGA § 17-10-6.1 (c) (1).

sentencing option, OCGA § 17-10-6.1 (b) (2) provides that the sentence shall

> be a split sentence which shall include a mandatory minimum term of imprisonment of 25 years, followed by probation for life. No portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court and shall not be reduced by any form of pardon, parole, or commutation of sentence by the State Board of Pardons and Paroles.

This language addresses the Legislature's decision to preclude any possibility of parole during the 25-year minimum mandatory sentence.[3] OCGA § 17-10-6.1 (c) (4) addresses the issue of parole for any time exceeding the mandatory minimum. In that regard it provides that any such sentence "shall be served in its entirety as imposed by the sentencing court and shall not be reduced by any form of parole or early release . . . ." As Merritt correctly observes, when the language in OCGA § 16-6-1 (b) and subsection (c) (4) of OCGA § 17-10-6.1 are construed together, the result is that trial courts are authorized to impose what may constitute a "de facto" sentence of life without parole by sentencing a defendant to a term of years that, while "not exceeding life imprisonment" as provided by OCGA § 16-6-1 (b), may nevertheless equal a defendant's probable life span, which the defendant would then be required by OCGA § 17-10-6.1 (c) (4) to serve in its entirety without any possibility of parole.

Contrary to Merritt's argument, there is no conflict between the term of years sentencing option in OCGA §§ 16-6-1 (b) and 17-10-6.1 and our holding that life without parole cannot be a punishment for rape. See *State v. Velazquez*, supra, 283 Ga. at 208-209. That holding is predicated upon the codified and uncodified language enacting OCGA §§ 17-10-16 and 17-10-32.1, see Ga. L. 1993, p. 1654, § 1 et

---

[3] We recognize that OCGA § 17-10-6.1 (b) (2) contains a double negative, specifically, "[n]o portion of the mandatory minimum sentence . . . shall *not* be reduced by any form of pardon, parole, or commutation of sentence by the State Board of Pardons and Paroles." (Emphasis supplied.) See also id. at (b) (1) (same). While a strict grammatical construction of this language would result in an affirmative, i.e., that all portions of the mandatory minimum sentence shall be reduced by pardon, parole or commutation, see generally *Carroll v. State*, 77 Ga. App. 251 (48 SE2d 491) (1948), the intention of the Legislature is the cardinal guide to construction of statutes and it is well established that that intent will prevail over the literal sense of terms. *New Amsterdam Cas. Co. v. Freeland*, 216 Ga. 491, 495 (117 SE2d 538) (1960). Applying these rules of statutory construction, we hold that OCGA § 17-10-6.1 (b) (2) provides for the punishment of "25 years to life, followed by life on probation, with no possibility of probation or parole for the minimum prison time of 25 years." (Footnote omitted.) *Humphrey v. Wilson*, 282 Ga. 520, 529 (652 SE2d 501) (2007).

seq., and the effect on that legislation of case law precluding a death sentence for a rape conviction. See *Coker v. Georgia*, supra, 433 U. S. at 592 (III). See also *Kennedy v. Louisiana*, supra, 554 U. S. 407 (II) (grant of writ of certiorari referenced in *Velazquez*, supra at 208, n. 2). Nothing in the enactment of OCGA §§ 17-10-16 and 17-10-32.1 or our holding in *Velazquez* served to preclude the Legislature when it amended OCGA §§ 16-6-1 (b) and 17-10-6.1 in 2006[4] from authorizing trial courts to impose a "de facto" life without parole sentence for a first conviction of rape.

Nor do we agree with Merritt that the possibility of a "de facto" sentence of life without parole created by the term of years sentencing option in OCGA §§ 16-6-1 (b) and 17-10-6.1 violates his Fifth and Fourteenth Amendment rights to due process of law.[5] Based on our review of the sentencing scheme for a first conviction of rape, we find that the applicable statutes give fair warning that a defendant may be sentenced either to life imprisonment, for which he is eligible to be considered for parole after 30 years, or to a term of years, with the minimum sentence being 25 years without parole and with any additional years, which may include a defendant's entire life span, being likewise not subject to any possibility of parole. See OCGA § 16-1-2 (purpose of Criminal Code is to give fair warning of nature of conduct forbidden and sentence authorized upon conviction). This statutory scheme puts a defendant on unambiguous notice that the possible statutory range applicable to a first conviction for rape is a minimum term of 25 years and a maximum term of years not exceeding the length of defendant's life, all without the possibility of parole, and that the only possibility of parole arises after 30 years in prison should a life sentence subject to OCGA § 17-10-6.1 (c) (1) be imposed.

We therefore reject Merritt's related due process and Sixth Amendment challenges to the rape sentencing scheme regarding a defendant's understanding of the consequences of pleading guilty to rape. We hold that a defendant never before convicted of rape who is contemplating a plea of guilty to a rape charge would reasonably understand that he faces either a life sentence, for which he would be eligible for consideration for parole after 30 years, or a term of years during which no parole was possible, with the term ranging from a minimum of 25 years to a number that would encompass the rest of his natural life. These statutes enable a defendant to readily ascer-

---

[4] We note that the 2009 amendment to OCGA § 17-10-6.1 has further changed the sentencing for rape but this amendment is not applicable to Merritt because it applies only to crimes committed on or after its effective date of April 29, 2009. Ga. L. 2009, p. 223, §§ 8, 10.

[5] Merritt makes no Eighth Amendment cruel and unusual punishment challenge to these statutes.

tain the relevant law governing the sentences available for a first conviction for rape such that a defendant can be apprised of and fully understand the possible consequences when weighing whether to enter a guilty plea to the charge. See *Brady v. United States*, 397 U. S. 742, 748-749, n. 5 (I) (90 SC 1463, 25 LE2d 747) (1970) (defendant must fully understand charges against him and possible consequences of his plea when pleading guilty). Moreover, to the extent any confusion may have existed previously in the law regarding the sentencing consequences regarding a first conviction of rape, that confusion is removed by this opinion.

*Judgment affirmed. All the Justices concur, except for Nahmias, J., who concurs specially.*

NAHMIAS, Justice, concurring specially.

I agree with the majority opinion's conclusion on the tangential issue discussed in footnote 3, but I do not join all of the majority's reasoning. As noted by the majority, OCGA § 17-10-6.1 (b) (2) contains an obvious grammatical error, the omission of an "it" before the "shall not," referring back to "the mandatory minimum sentence":

> Notwithstanding any other provisions of law to the contrary, the sentence of any person convicted of the serious violent felony of [list of five offenses including rape] shall, unless sentenced to life imprisonment, be a split sentence which shall include a mandatory minimum term of imprisonment of 25 years, followed by probation for life. No portion of the *mandatory minimum sentence* imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court and [it] shall not be reduced by any form of pardon, parole, or commutation of sentence by the State Board of Pardons and Paroles.

(Emphasis supplied.)

As the majority explains, a "strict grammatical construction" of this subsection, based on the double negative in its second sentence, would *require* the Parole Board to reduce *all* portions of the prison sentence imposed. Such a narrow and literal reading, however, would directly contradict both the earlier text of the same subsection, which identifies the sentence at issue as a "mandatory" and "minimum" term of "imprisonment," and the text of the statute as a whole, which sets forth a series of sentence *enhancements* for defendants convicted of particularly serious felonies. It would also lead to the strange result of the sentencing judge being directed to *never* reduce the mandatory minimum sentence in any way while the

Parole Board is directed to *always* do so, but with no suggestion of how or by how much.

As the majority mentions in passing, OCGA § 17-10-6.1 (b) (1) contains the same language. Indeed, it is apparent that subsection (b) (2), which was added in 2006, simply copied the language at issue from subsection (b) (1). See Ga. Laws 2006, p. 379, § 20. Subsection (b) (1) was originally enacted in 1996. See Ga. Laws 1994, pp. 1965-1966, § 11. Although not included in the Official Code of Georgia Annotated, the full text of the legislation actually passed by the General Assembly leaves no doubt that the double negative is an insignificant grammatical error. Thus, Senate Bill 441, from which subsection (b) (1) was codified, states in its preamble that it is an act:

> To provide that persons who are convicted of certain serious violent felonies shall serve minimum terms of imprisonment which shall not be suspended, probated, deferred, or withheld by the sentencing judge *and to restrict the granting of paroles, earned time, or other such sentence-reducing measures* to persons convicted of certain serious violent felonies; [and] . . . to restrict the authority of the State Board of Pardons and Paroles with respect to the granting of paroles or early release to persons who has [sic] been convicted of certain serious violent felonies . . . .

Ga. Laws 1994, pp. 1959-1960, Preamble (emphasis supplied). The act also sets forth the General Assembly's declaration and finding:

> (1) That persons who are convicted of certain serious violent felonies shall serve minimum terms of imprisonment which shall not be suspended, probated, stayed, deferred, or otherwise withheld by the sentencing judge; and
>
> (2) That sentences ordered by courts in cases of certain serious violent felonies shall be served in their entirety and *shall not be reduced by parole* or by any earned time, early release, work release, or other such sentence-reducing measures administered by the Department of Corrections.

Id. at 1961 (emphasis supplied).

Thus, a natural and contextual reading of the statute as codified, as opposed to a literal or strict construction, clearly shows that the mandatory minimum sentence of at least 25 years imposed for rape cannot be reduced in any way by either the sentencing court or the Parole Board. That this is the natural reading of the Code section is further suggested by the fact that this Court has previously construed OCGA § 17-10-6.1 (b) (2) this way without commenting on

the "double negative," see *Humphrey v. Wilson*, 282 Ga. 520, 529 (652 SE2d 501) (2007) ("For aggravated child molestation, the punishment for adults is now 25 years to life, followed by life on probation, with no possibility of probation or parole for the minimum prison time of 25 years."), as has the Court of Appeals, see, e.g., *Childrey v. State*, 294 Ga. App. 896, 897, n. 3 (670 SE2d 536) (2008) ("Similarly, the current mandatory minimum 25-year sentence for these offenses cannot be paroled. See OCGA § 17-10-6.1 (b) (2), as amended in 2006."). This reading was also adopted by the parties in this case, who did not raise this issue, much less focus on the double negative. See, e.g., Brief of Appellant at 14 (stating that OCGA § 17-10-6.1 gives the sentencing judge the option of sentencing a rape defendant to "a term of imprisonment not less than 25 years, but with no statutory maximum number of years, without any possibility for receiving parole"). Review not just of the Code but of the actual legislation voted on by the General Assembly and enacted into law demonstrates conclusively that the contextual reading is correct.

The majority does not engage in any of this analysis. Instead, it simply states that "the intention of the legislature is the cardinal guide to construction of statutes and it is well established that intent will prevail over the literal sense of terms," citing *New Amsterdam Cas. Co. v. Freeland*, 216 Ga. 491, 495 (117 SE2d 538) (1960). If by this the majority means that the intention of the legislature is determined by the meaning of the language of the statutes it passes, with that meaning properly understood in full context, rather than woodenly and through a literalist dissection of individual words or phrases, then I fully agree. The majority certainly identifies no basis, other than the language of the statute, for determining legislative "intention." On the other hand, the majority does not explain why that language leads to its conclusion, instead simply citing *New Amsterdam* and the summary dicta from *Humphrey*.

The cited page of *New Amsterdam* states the following:

> To give effect to the intention of the legislature, courts are not controlled by the literal meaning of the language of the statute, but the *spirit* or intention of the law prevails over the letter thereof. *Erwin v. Moore*, 15 Ga. 361; *Roberts v. State*, 4 Ga. App. 207, 60 SE 1082. Where the letter of the statute results in absurdity or injustice or would lead to contradictions, the meaning of general language may be restrained by the *spirit or reason* of the statute. Where the intention of the legislature is so inadequately or vaguely expressed that the court must resort to construction, it is proper to consider the result and consequences. It is the duty of the court to consider the results and consequences of

> any proposed construction and not so construe a statute as will result in *unreasonable* or absurd consequences not contemplated by the legislature. *Board of Tax Assessors of Decatur County v. Catledge*, 173 Ga. 656, 160 SE 909; *Evans v. Evans*, 190 Ga. 364, 9 SE2d 254; *Sumter County v. Allen*, 193 Ga. 171, 17 SE2d 567; *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 62 SE2d 209. Sutherland, Statutory Construction, Vol. 2, 339, § 4706; Vol. 3, 149, 153, 157, §§ 6006, 6007, 6102.

216 Ga. at 495 (emphasis supplied).

Many cases from this Court before and since *New Amsterdam* contain similar loose statements regarding statutory interpretation. Some of what is said is not objectionable. Statutes should be read naturally and contextually, and thus not to create "contradictions" or "absurd consequences" or "injustice" (if by that word one means a violation of the Constitution or some other law). But when judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed "spirit" or "reason" of the legislation, and the need to make sure the law does not cause "unreasonable . . . consequences," we venture into dangerously undemocratic, unfair, and impractical territory. The "spirit or reason" approach to statutory interpretation invites judges to read their own policy preferences into the law, as we all believe that our own policy views are wise and reasonable, which tempts us to assume, consciously or unconsciously, that the legislature could not have intended differently. I do not doubt the general wisdom and reasonableness of judges, but this approach tends to replace democratic government with judicial government.

Moreover, this approach, in my view, is quite unfair to our citizens, who are required to obey not the law that the lawgiver *actually* promulgated but rather the law that the lawgiver is later determined to have *intended* to promulgate. Finally, as in this case, this approach usually leaves unanswered just how the "intention" of a multi-member legislative body is to be determined, if not from the text of the laws that it actually passed. The legislative history of a statute and the debates regarding it, along with many other sources like contemporary dictionaries and prior use of terms in statutes and cases, may help us to understand the meaning of the various terms used in the final text on which the legislature voted. But how, putting aside the text, are we to figure out what "intention" was in the head of the legislators when they voted? And are we searching for the intention of the entire legislature? A majority of the members who voted? Just the key members or sponsors of the bill or others who

spoke or wrote about the bill at some point before (or after) passage, in some way that was publicly reported? What if no majority of members voted on it with the same intention? And what of the intention of the Governor who signed the bill?

After identifying the interpretative issue and citing *New Amsterdam*, the majority opinion here simply asserts, ipse dixit, that it has applied "these rules of statutory construction" to reach the conclusion regarding OCGA § 17-10-6.1 (b) (2) that was stated in *Humphrey*'s summary dicta. But *New Amsterdam*, like many other cases discussing legislative "intention" in terms divorced from legislated text, is susceptible to misuse. I am not sure how it is being used here, and I am wary of endorsing it in any way. I see no need to venture down the path of legislative "intention" in a case where the meaning of the statute at issue is undisputed by the parties and entirely clear when read in context. I therefore join the majority opinion, including its conclusion regarding the proper construction of OCGA § 17-10-6.1 (b) (2), but I do not join the explanation for that conclusion as set forth in footnote 3.

DECIDED MARCH 15, 2010.

*Larry D. Wolfe, Robert A. Susor*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellee.