### A10A0618. POWERS v. THE STATE.
(693 SE2d 592)

ELLINGTON, Judge.

A Houston County jury found Alvin Powers guilty beyond a reasonable doubt of robbery by intimidation, OCGA § 16-8-41 (a); false imprisonment, OCGA § 16-5-41 (a); aggravated assault (with a deadly weapon), OCGA § 16-5-21 (a) (2); and impersonating a peace officer, OCGA § 16-10-23. He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions and that he received ineffective assistance of counsel. For the following reasons, we affirm.

1. Powers argues that the evidence was insufficient to support his convictions. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

On March 25, 2006, Powers' girlfriend, Christina Henderson, called the victim. Henderson told the victim that she needed some money. After the victim told her he did not have any money to give her, she called him back and asked him to come to her house because she needed to see him right away. When the victim arrived, Henderson was alone and was dressed in a t-shirt and underwear. Shortly after the victim entered the house, Powers and another man, Homer Lyons, came in through the back door. Both of the men were wearing black t-shirts with white lettering that read "Sheriff" or "Sheriff's Department," and Powers was carrying a .380 automatic weapon. One of the men ordered the victim to lie face down on the floor, and then Lyons handcuffed him. They took $114 out of the victim's pocket, and Powers kicked the victim in the chest. Powers sent Lyons out to the victim's car, and Lyons returned with the victim's brief-

case and Bible. Powers took the victim's title to his motorcycle out of the briefcase and forced the victim to write a bill of sale dated that day and stating that he had received $3,000 for the motorcycle. The men also forced the victim to promise to withdraw $10,000 from his 401(k) retirement account and give it to them within five days. Powers smeared deodorant on the wall and made the victim put his fingerprints in it, telling him it was "evidence." The men also took photographs of the victim with the victim's cell phone.

In addition, Powers threatened to tell the victim's wife that he had come to the house to have sex with Henderson, then pointed the gun at the victim and forced him to write a note that said he had gone to the house to be with "Christy" and "got caught by her husband." The note also said that the victim had grabbed "his wife" and tried to rape her and have her perform oral sex on him, "[b]ut her husband was nice enough to talk to me and pray for me and let me go!" After about three to four hours, the men let the victim go home, but ordered him to come back with the motorcycle or they would "do something to [his] family." Because he still believed that the men were employed by the sheriff's department, the victim complied, leaving the motorcycle in Henderson's driveway.

Then the victim called a friend who was the chief of police and reported the crimes. Following a videotaped interview in which the victim recounted the crimes and gave the address of the house, a police officer went to the house and helped the victim retrieve his motorcycle. The victim also gave a written statement to police that was consistent with his trial testimony, and he identified Powers from a photographic lineup. Finally, when asked at trial why he did not immediately tell his wife or someone else about the crimes, the victim explained that he thought Powers and Lyons were police officers and he was concerned for his family's safety.

In addition to the testimony of the victim and the investigating officers, the State presented the testimony of Henderson, who had already pled guilty to false imprisonment of the victim. Henderson testified that she lured the victim to her house to "set him up" for Powers and Lyons and that, while the victim was on his way, she made a plan with the men to signal them when the victim arrived. Henderson's testimony regarding what occurred from the time Powers and Lyons entered the house until the victim returned to the house with the motorcycle was consistent with that of the victim. The State also introduced into evidence a letter written by Powers to Henderson in which he told her to tell the police that she and the victim had been having a sexual relationship for several years.

Viewing this evidence in the light most favorable to the jury's verdict, we conclude that it was much more than sufficient to support a rational factfinder's conclusion that Powers was guilty

beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

2. Powers contends that the trial court erred in denying his motion for new trial after finding that he received the effective assistance of counsel. He claims that his counsel was ineffective for failing to adequately prepare for trial; specifically, he complains that counsel failed to meet with him while he was incarcerated and failed to properly prepare a defense for the charges. Powers also claims that counsel improperly failed to notify him of the State's plea offers.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

In this case, in the trial court's order denying Powers' motion for new trial, it found as follows:

> As for the claim of ineffective assistance of counsel, the Court finds no deficiency in trial counsel's performance. According to the evidence presented, counsel met several times with [Powers,] filed motions on his behalf, sought witnesses to support the defense and made appropriate objections at trial. Also, although counsel had no independent recollection, he testified [that] it was his practice to always relay to a defendant any offers made by the State, although he recalled that in the present case he knew from the beginning that the matter would be tried, as [Powers] was adamant he would not plea to any Armed Robbery[1] charge.

---

[1] The State indicted Powers for armed robbery, but the jury convicted him of the lesser included offense of robbery by intimidation.

Ultimately, the trial court concluded that, even if counsel's performance had been deficient, Powers had failed to demonstrate that he was prejudiced by such deficiency.

(a) The record supports the court's factual findings regarding counsel's preparation for trial, showing that counsel filed numerous pre-trial motions, including a motion to suppress and a motion to sever, as well as a demurrer to the indictment and a demand for speedy trial. The trial transcript demonstrates that counsel vigorously cross-examined the State's witnesses and presented the testimony of the victim's wife in an effort to impeach the victim's testimony. Further, Powers has not identified any evidence or defense theory that counsel failed to present at trial. Absent these showings, Powers has failed to sustain his burden of demonstrating that counsel's preparation for trial was deficient.

(b) The fact that counsel met with Powers for an amount of time that he claims to be inadequate "is not dispositive, as there exists no magic amount of time which counsel must spend in actual conference with his client." (Citation and punctuation omitted.) *McCutchen v. State*, 276 Ga. 532, 533 (579 SE2d 732) (2003). While there is arguably some contradictory evidence in the record regarding the number and duration of visits between counsel and Powers prior to trial, "[t]he trial court was authorized to resolve this dispute in favor of the State and to find that [Powers] failed to carry his burden of showing that the consultation was deficient." (Citations omitted.) Id. Moreover, given the overwhelming evidence of Powers' guilt, he has failed to demonstrate that there was a reasonable likelihood that more frequent or longer visits would have changed the outcome of his trial.

(c) As for counsel's alleged failure to notify Powers of the State's proposed plea offers, the record shows that, prior to trial, the State offered to recommend a reduced sentence and to dismiss the other charges if Powers pled guilty to armed robbery and false imprisonment. The transcript of the motion for new trial hearing shows that counsel testified that Powers had consistently and adamantly refused to plead guilty to armed robbery. Although Powers testified that, if he had known the State was offering to recommend a sentence of fifteen years with ten to serve, he "probably" would have accepted it, the evidence simply presented a factual matter that was reserved for resolution by the trial court. *Childrey v. State*, 294 Ga. App. 896, 900 (670 SE2d 536) (2008). Based on the evidence before it, the trial court was authorized to conclude that Powers' claim that he probably would have accepted the plea lacked credibility. Id. at 901. In fact, implicit in the trial court's rejection of Powers' ineffectiveness claim is its conclusion that there was no reasonable likelihood that Powers would have pled guilty but for counsel's failure to notify

him of the plea offers. Id. at 901. As noted above, we must accept the trial court's factual findings and credibility determinations unless clearly erroneous. *Robinson v. State*, 277 Ga. at 75-76. Because Powers has failed to demonstrate that the court's findings constitute error, this ineffectiveness claim must fail.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED APRIL 1, 2010.

*Fred I. Graham*, for appellant.

*Kelly R. Burke, District Attorney, Jason E. Ashford, Venita S. McCoy, Assistant District Attorneys*, for appellee.