**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**September 10, 2020**

# In the Court of Appeals of Georgia

A20A1426. CREWS v. THE STATE.                                    HO-049C

HODGES, Judge.

Following a jury trial, Dedrick Octavious Crews was convicted of aggravated assault (OCGA § 16-5-21) for his part in a group stabbing attack of an inmate at Augusta State Medical Prison. In 2014, he received a 20-year sentence, as a recidivist, pursuant to the then-effective version of OCGA § 17-10-7 (a) and (c).[1] After the trial court denied his motion and amended motions for new trial, Crews filed the instant appeal. In it, he asserts that the trial court misinformed him about the sentencing possibilities before trial began, impacting his decision to reject the State's plea offer. He also argues that his trial counsel provided ineffective assistance by failing to

_____

[1] See Ga. L. 2013, Act 84, § 10, effective July 1, 2013, to May 4, 2015.

inform him of the consequences of rejecting the State's plea offers. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that the victim, Wydreicus Denison, was attacked in the prison yard by about eight other inmates, including Crews, who choked and stabbed him. Denison testified that Crews was a member of a prison gang called the Gangster Disciples. Denison previously had been affiliated with the Gangster Disciples, and had memorialized this with a tattoo on his arm. After deciding he no longer wanted to be part of the gang, he had the tattoo removed. Three days later, he was stabbed 18 times. He spent two months in the hospital recovering from the wounds. Denison testified that the gang may have thought he was a "snitch," a situation which would "[g]et you killed." He initially identified Crews as one of his attackers in a photo lineup, but later retracted that statement, saying Crews and others were not involved. Denison retracted his first statement because, "I was threatened further and I knew that those guys were probably going to catch me later if I don't do this." After he again got threats, however, he withdrew the retraction and implicated Crews to the Georgia Bureau of

---

[2] *Whitehead v. State*, 304 Ga. App. 213, 214 (1) (695 SE2d 729) (2010).

Investigation ("GBI"). At trial, he testified that he told the GBI the truth and that he knew "for sure" that Crews was one of the people who stabbed him.

Crews testified in his own defense. He denied attacking Denison and testified that he was in his dorm during the attack, where he would typically hang out with his "GD Brothers." He testified that the GD Brothers were formerly called Gangster Disciples, but the gang name had been changed to "Growth and Development." Crews acknowledged seeing Denison getting stabbed outside his window, but testified that he did not know who the attackers were, saying, "I see and I don't see."

1. Crews argues that he is entitled to a new trial because a comment made by the judge influenced his decision to decline the State's offer of a plea bargain. We disagree.

Crews had rejected two prior plea offers from the State, one in which he would have spent 10 years in confinement beyond the sentence he was currently serving, and another in which he would have spent five years in confinement beyond his current sentence, and five on probation. Immediately before trial, the State made a third offer. If Crews pled guilty, the State would waive recidivist sentencing, would not require his cooperation in implicating others, and would recommend that he serve his new

sentence concurrently with the sentence he was presently serving, meaning he could have been eligible for release in just under five years.

Crews asserts error about the following colloquy with the trial court:

[The State]: At this time, the State would be willing to offer Mr. Crews the opportunity to plead guilty and we would not extend his confinement portion past his max release date, which I believe was previously stated as being October 2018. . . . In the event he does go forward [with trial], Your Honor, we would be proceeding forward with recidivist [OCGA § 17-10-7 (a) and (c)] in place, *which would require the [c]ourt to sentence him to the longest amount of time in confinement, which would be 20 years and . . . he would receive no parole eligibility.* So he would serve every single day of that 20 years in confinement.

THE COURT: Let's make sure we're clear on that one thing and that is that the [c]ourt *is not required to sentence the max.* . . . But *whatever the [c]ourt sentences him to* he'll serve every single day of it?

THE STATE: Correct. . . . [W]e would be asking you to . . . *make him serve 20 years in confinement whatever your sentence . . . and that would be with no parole.* . . . [B]ased upon his criminal history that would not be an unreasonable sentence.

Crews proceeded to trial and the jury found him guilty. At sentencing, the State presented evidence of three prior felonies, and Crews was sentenced as a recidivist

4

to serve 20 years in prison, without parole, pursuant to former OCGA § 17-10-7 (a) and (c).[3]

> We find no reversible error. Although the trial court did not inform [Crews] that he would receive a mandatory [20-year] sentence if convicted, it clearly stated that [a 20-year sentence] was possible. . . . Because [Crews] knew that he could receive a [20-year] sentence, he was sufficiently apprised of the risks of going to trial.

(Citation omitted.) *Sutton v. State*, 263 Ga. App. 188, 190 (587 SE2d 379) (2003) (finding no error where trial court erroneously told defendant that the range of punishment for armed robbery was "10-20 years in prison or life," when in fact, the trial court was required to, and ultimately did, sentence defendant as a recidivist to the maximum life in prison) (punctuation omitted); see generally *Harris v. State*, 334 Ga. App. 456, 459-460 (779 SE2d 692) (2015) (citing *Sutton*, and collecting similar cases in which defendant was not made aware of mandatory sentence, but knew of

---

[3] At the hearing on his motion for new trial, Crews testified that he was not in the courtroom when the plea offer/20-year recidivist sentencing discussion, about which he complains in this enumeration, took place. If this were so, he cannot have been misled or confused by the trial court's comments about its ability to give him other than a 20-year sentence. The transcript reflects, however, that he was present during this discussion. He responded to questions from the trial court, and the trial court offered him time to discuss the offer with his counsel, though no follow-up to that discussion is recorded in the transcript.

5

possibility of maximum sentence). The trial court in the instant case at no point indicated that it *could not* sentence Crews to 20 years in prison. Rather, the trial court clearly indicated that it *could* sentence him to 20 years in prison. The colloquy quoted above clearly alerted Crews that "the consequences of refusing the State's plea offer could be harsher than the consequences of accepting it." (Citation and punctuation omitted.) *Sutton*, 263 Ga. App. at 190. Crews, however, turned down the plea offer. Crews is not entitled to a new trial on this basis.

2. Crews next contends that his trial counsel rendered ineffective assistance by inadequately informing him of the consequences of recidivist sentencing and of rejecting the State's last plea offer.[4] We disagree.

To prevail on an ineffective assistance claim, Crews

> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

---

[4] Crews' motion for new trial was heard and decided by a different judge than the judge who made the statements about which Crews complains. This judge held two separate hearings regarding Crews' motion for new trial.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). When an ineffectiveness claim is raised in the context of a rejected plea offer, if counsel's performance is found to be deficient, the defendant must then show he was prejudiced by, among other things, showing that he would have accepted the offer but for counsel's ineffectiveness, and that the court would have accepted the offer's terms. *Gramiak v. Beasley*, 304 Ga. 512, 515 (I) (B) (820 SE2d 50) (2018).

At the motion for new trial hearings, Crews testified that he met with his trial lawyer in an interview room prior to going into the courtroom. His lawyer told him that if he pled, the State was offering a sentence that would run concurrently with his present sentence, and that his lawyer told him, "you wouldn't even be doing a day more than you already serving." He told his lawyer, however, that he was not interested because he thought he had an "open and shut" case and that he did not "want no extra conviction on my record."

Crews testified that he and his lawyer never discussed parole eligibility or the mandatory 20-year sentence if he were convicted as a recidivist. He testified that he "knew" generally, although his lawyer had not told him so, that "[he] would get the maximum sentence if [he] was convicted." Crews further testified that he was not in the courtroom when the State and trial court discussed the shorter plea offer or 20-

7

year recidivist sentence. See n. 3, supra. He testified that he had not been willing to plead guilty prior to trial but was willing to do so "[r]ight now," saying "[i]f I would have known I was going to be doing these 20 years, yeah, I would have took [the State's plea offer]."

Trial counsel, by contrast, testified that he never told Crews this was an open and shut case, but rather said it was a "fair case" to go to trial with because the victim, Denison, was not credible. Trial counsel testified that he first met with Crews in prison. He testified that he specifically remembered following his normal practice and giving Crews copies of the recidivist statute and the State's recidivist notice. Counsel testified that he was "100 percent sure" he discussed OCGA § 17-10-7 (a) and (c) with Crews, and that he would have said:

> under recidivist C, you get the max and you do the max. Aggravated assault carries 20 years. Now under recidivist A, the judge is obligated to give you the max but he can probate a portion of it but under C, you get the max, which in this case would have been 20 years. . . . And you have to do every day to the door.

Trial counsel recalled that on the day of trial he again discussed with Crews the possibility of a 20-year, no-parole recidivist sentence if Crews were convicted. Noting that the plea offer "was hard to turn down," counsel testified that he

8

recommended that Crews take the offer. Although Crews had only completed part of eighth grade, trial counsel testified that Crews had a "certain sophistication" about sentencing issues gleaned from his time in prison, and "was very involved in his case. We were talking. There was nothing about anything that he and I talked about that gave me the impression he did not understand what he was doing." Trial counsel testified that in the meeting prior to entering the courtroom, he presented Crews with the State's offer, but "[h]e turned it down[.]" When asked if Crews ever was receptive to pleading guilty, counsel testified, "No[,] I guess not."

Faced with a wealth of contrary testimony, the trial court examined the disputed facts and found in its order denying Crews' motion for new trial that "it is clear that [trial counsel] explained each offer and the effect of the recidivist statute, . . . that the offer was communicated to Crews before he entered the courtroom[,] . . . that Crews rejected the offer[, and] . . . that the plea was adequately explained in court." It further found that "[i]t is unreasonable to believe that Crews did not know the 'max' is 20 years for aggravated assault. Crews was at times less than forthcoming." The trial court then determined that "Crews was fully informed of the plea offer and the implications of the recidivist statute *by counsel* and *in court* before trial began." (Emphasis in original).

9

While there could be an inference from the evidence that Crews would have accepted the State's final plea offer, "[s]imply because an inference could be drawn even where the evidence is disputed or unclear on this question, [this] does not mean that a trial court is required to do so in cases where the evidence is disputed." (Citation and punctuation omitted.) *Childrey v. State*, 294 Ga. App. 896, 899 (670 SE2d 536) (2008).

Crews has not met his burden of showing that counsel's performance was deficient. We therefore need not address the prejudice prong of the ineffective assistance of counsel test. See *Hill*, 291 Ga. at 164 (4). Crews has not shown clear error, and we find no error.

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur*.